### ROBERT BUIST CO. v. LANCASTER MER. CO.

1. JURY—NEW TRIAL.—Where jury disregards instructions of Circuit Judge, new trial should be granted.
2. CONTRACT—FREIGHT—PAROL EVIDENCE.—Where an order for goods is silent as to freight, parol evidence is admissible to show the agreement of the parties as to payment of freight.

Before DANTZLER, J., Lancaster, March, 1903. Reversed.

Action by Robert Buist Co. against Lancaster Mercantile Co. From judgment for plaintiff, it appeals.

*Messrs. R. E.* and *R. B. Allison,* for appellants, cite: *Verdict contrary to charge should be set aside:* 16 S. C., 2; 19

S.·C., 489; 65 S. C., 197. *Where there is no evidence to sustain a verdict, new trial should be granted:* 45 S. C., 490; 14 S. C., 428; 19 S. C., 579; 54 S. C., 605.

*Messrs. Green & Hines,* contra, cite: *Incompetent testimony not objected to, becomes competent:* 35 S. C., 572; 52 S. C., 193. *Exception based on misconception of Judge's action, should be overruled:* 50 S. C., 218; 49 S. C., 7. *Failure to charge a particular view of the law is not error, if not requested:* 50 S. C., 49; 40 S. C., 533. *As to proving part of order by parol:* 31 S. C., 608. *As to granting new trials:* 57 S. C., 289; 59 S. C., 268; 63 S. C., 123, 559. *As to exceptions being too general:* 60 S. C., 67; 56 S. C., 252; 45 S. C., 33; 37 S. C., 124, 56; 39 S. C., 281. *Court must construe writings:* 66 S. C., 459.

April 20, 1904. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. Robert Buist Co., of Philadelphia, Pa., entered into a contract with the Lancaster Mercantile Co., a corporation located at Lancaster, S. C., of which the following is a copy:

"The consolidated order, marked 'A' above, reads as follows:

'John Mahan. Order No. 192. Lancaster, Oct. 24, 1900. Robert Buist Co., Philadelphia, Pa. Order X sheet.

| Onion sets: | Bbls. | Price per bush. |
|---|---|---|
| Yellow or red............. | 5................... | 2 25 |
| White or silver skin........ 3. | ................... | 2 75 |
| Seed potatoes: | Bbls. | Price. |
| Houlton Maine Rose......50 | ................... | 2 65 |
| Bliss Triumph ...........40 | ................... | 2 75 |
| Breeses Peerless ...........25 | ................... | 2 65 |
| Early Goodrich ...........10 | ................... | 2 65 |

One bu. red val. beans, at 3.40.
Signature, Lancaster Mercantile Co., Lancaster, S. C.
Ship Feb. 1st.'

" 'This order is absolute and not subject to countermand, but subject to any decline occurring on eastern grown stock to date of shipment.' I had to cut to get order.. Confirm same if accepted."

The letter marked "B" reads as follows, to wit:

"Philadelphia, Pa., Nov. 2d, 1900.

"Lancaster Mercantile Co., Lancaster, S. C.

"Gentlemen: We are in receipt of your valued order through our Mr. Mahan; which we accept, and will forward at the proper time as agreed.

"Yours very truly,          Robert Buist Co."

Differences sprang up between the parties to the contract, which mainly related to the question as to the payment of freight from Philadelphia, Pa., to Lancaster, S. C., on the merchandise, which was embraced in the contract. It so happened that fifty barrels of the seed Irish potatoes, under the contract, were delivered, and when the check for ninety-seven and 40-100 ($97.40) dollars, which was the actual cost of the potatoes themselves, was sent to Robert Buist Co., they returned same because Robert Buist Co. demanded that the Lancaster Mercantile Co. should pay thirty-six ($36.00) dollars, which was the freight on the said fifty barrels of potatoes. It may be said that this was the beginning of their differences. And when the seventy-five barrels of seed Irish potatoes reached Lancaster, S. C., the Lancaster Mercantile Co. refused to accept the same, unless it was understood that they should pay no freight charges thereon. Whereupon, Robert Buist Co. telegraphed them that they would order the seventy-five barrels reshipped to Philadelphia, but would hold the Lancaster Mercantile Co. responsible for freight both ways and expenses connected. Accordingly the seventy-five barrels were reshipped. Although Robert Buist never accepted the check for ninety-seven and 40-100 ($97.40) dollars, yet both parties admit that sum to be due. Robert Buist Co., as plaintiff, brought this action in the Court of Common Pleas for Lancaster against the Lancaster Mercantile Co., as defendant, to re-

cover the sum of two hundred and forty-one and 40-100 ($241.40) dollars, which sum embraced ninety-seven and 40-100 ($97.40) dollars, admitted by both sides, and also thirty-six ($36.00) dollars freight on the first fifty barrels; and also one hundred and eight ($108.00) dollars freight both ways on the seventy-five barrels. Defendant denied all liability except for the ninety-seven and 40-100 ($97.40) dollars.

At the trial, defendant sought to show that while no reference is made in the contract as to freight, that it was agreed at the time of the contract that the merchandise should be delivered at Lancaster, S. C., without any charge for freight against the defendant. Steady and serious contention was carried on in the effort to introduce testimony on this issue, but the Circuit Judge held that it was not competent for the defendant to enlarge the written contract; and further held, that where a contract is silent in regard to the freight charges on merchandise shipped from one pointt to another, to wit: from the place of the seller to the place of the buyer, that the law holds that the delivery is at the place of the seller, and consequently all costs for freight between the two points is to be paid by the buyer. This he held when testimony was offered, and he so charged the jury, it being his duty, as he stated to the jury, to construe the contract for them, it being in writing. But the jury disregarded this instruction of the presiding Judge, and found a verdict for ninety-seven and 40-100 ($97.40) dollars for the plaintiff.

Among other grounds for a new trial, the plaintiff urged a disregard by the jury of the presiding Judge's charge upon the law. In the case of *Dent* v. *Bryce,* 16 S. C., page 14, the Court, through the late Chief Justice Simpson as its organ, declared: "It needs no authority, then, to say, that the jury is bound to take the law from the Court. This principle applies in every class of cases, except one not necessary now to be considered. And when the law is announced by the Court, it is the law of the case until overruled by a higher authority. It follows, then, that a verdict in

direct conflict with the law of the Court is a verdict against the law, and will in all cases be vacated in the first instance, either *sua sponte* by the Judge, or on motion of the aggrieved party. * * * If the jury could question the charge of the Judge, the result would be that in every case the whole case, both law and facts, would go to the jury, under the hope that, whatever might be the charge of the Judge at the time, he could be satisfied afterwards that he was in error. This could not be tolerated. It would degrade the judiciary and unhinge the whole system. The argument of the respondent, by which he attempts to draw a distinction between a verdict contrary to the charge of the Judge and one contrary to law, though ingenious, fails to meet the case. In fact, that doctrine would open the door to the very evil which a separaration of the powers and duties of the Court and jury was intended to prevent. So far as the jury is concerned, there is no such thing as the charge of the Judge being contrary to law, because, whatever may be his charge, it is the law to them."

There are other cases in our reports which are fully in accord with what we have quoted. The Circuit Judge, having charged the law and it having been disregarded by the jury, there must of necessity be a new trial.

We think, however, that it was competent for the defendant, as purchaser, to rebut the presumption that he was to pay the freight, and to show by parol testimony that the plaintiff agreed to do so. The written agreement was silent on this subject, and such testimony would not alter or vary the contract as reduced to writing— 21 A. & E. Ency. Law, 1094. Of course, the plaintiff should be allowed to introduce testimony on this subject in reply.

It is, therefore, ordered, and adjudged by this Court, that the judgment of the Circuit Court be reversed, and the action remanded to that Court for a new trial *de novo*.