### BLOWERS v. SOUTHERN RY.

1. EVIDENCE—AGENCY—PAROL.—A witness who knows another to be an agent of a corporation may testify to the fact.

2. IBID.—IBID.—That an agent after a certain time employed another to do a certain work throws light on whether he had authority to do it previous to that time.

3. NOTICE—IBID.—There being evidence tending to show acts and course of dealing by agent with the business of his principal, it is proper to submit to jury scope of agency, and any knowledge received by agent within scope of his agency is imputed to the principal.

4. QUANTUM MERUIT.—If a mail messenger perform services of trans-
fer clerk, which is the duty of the railroad company, and it had
knowledge of the mistake, and received benefit of his services, it
cannot escape liability to him for the services because he thought he
was doing the work for the government.

5. PRINCIPAL AND AGENT.—The principle that an agent to whom au-
thority is delegated cannot delegate that authority does not apply
where there is implied or expressed authority in the general agent
to employ sub-agents, and this authority may be inferred from the
nature of the duties and powers committed to the general agent.

6. APPEAL—NEW TRIAL.—This Court cannot consider if a verdict is
excessive or contrary to the weight of the evidence.

7. NEW TRIAL—APPEAL.—If jury disregard the instructions of the Court
and render a verdict out of proportion to amount sued for against
such instruction, this Court will grant new trial *nisi*.

Before WATTS, J., Spartanburg, February, 1905.   Re-
versed *nisi*.

Action by R. D. Blowers against Southern Railway Co.
From judgment for plaintiff, defendant appeals.

*Mr. C. P. Sanders,* for appellant, cites: *It is not a com-
mon law or statutory duty of railroad company to carry
mails:* U. S. Rev. Stat., 3999, *et seq.;* 19 Stat., 72-82; 25
Ct. of Cl., 30; 142 U. S., 615; 164 U. S., 190; Bald. Am.
R. R. L., 399; 76 Ala., 357; 12 Stat., 508; 11 Stat., 348.
*Scope of authority of agent must be shown:* 1 Elliott on R.
R., sec. 211; 35 S. C., 521; Meach., sec. 276; 3 Cook on
Cor., 4 ed., sec. 720. *Declarations after transaction by agent
are not res gestae:* 1 Elliott on R. R., sec. 218; 27 S. C., 63;
53 S. C., 450; 70 S. C., 22. *The messenger thought he was
being paid by government for transferring, he cannot now
recover of defendant:* 22 Ency., 530; 45 Am. St. R., 875; 62
S. C., 15. *An agent having only delegated authority, can
not delegate it:* Mech. on Ag., secs. 191, 184, 185.

*Messrs. Johnson & Nash,* contra, cite: *Railway company
is presumed to know the agency by which it performed the*

*work:* 70 S. C., 380. *Acts of station agent bind the company:* 72 S. C., 120, 259.

April 18, 1906. The opinion of the Court was delivered by

·MR. JUSTICE JONES. The plaintiff in this action sought compensation upon an implied contract for services rendered by plaintiff to defendant in transferring mail matter from one train to another at Spartanburg, S. C., from July 1, 1894, to July 1, 1900, alleged to be reasonably worth $1,990. The jury rendered a verdict in favor of plaintiff for $1,750, and from the judgment thereon defendant now appeals.

It appears that during the said period plaintiff was a mail messenger in the employ of the United States Government, and as such it was his duty to carry the mail to and fro between the trains and post office, but it was not his duty to transfer the mail from one train to another, as this fell within the contract of the defendant company with the Government to transport the mail. The plaintiff, acting under the belief that it was his duty to transfer the mail from train to train, performed these services during the time alleged without demanding or receiving any compensation therefor from the defendant company. Upon discovering that he had been doing the work of defendant company, he demanded pay and upon defendant's refusal brought this action, March 31, 1903.

This is the second appeal. On the former appeal by plaintiff from an order of nonsuit, wherein this Court granted a new trial, the principle was announced that "where one who is under no legal or moral obligation to do so renders services to another at his request, or with his knowledge and acquiescence, the law raises an implied promise on the part of the person receiving the services to pay what they are reasonably worth." *Ex parte Aycock,* 34 S. C., 256, 13 S. E., 450. One of the vital points of the controversy on the second trial, therefore, was whether the services were rendered with the knowledge and acquiescence of the defendant.

The first and second exceptions, relating to the admissibility of testimony, are as follows:

"In allowing the plaintiff, against the objections of the defendant, to testify to the following facts:

"a. That he did the work of transferring the mail at Spartanburg under the direction and supervision of W. P. Irwin, agent of the Southern Railway, and to answer the question, 'Under whose supervision or direction did you do the work as transfer clerk?'

"b. That Mr. W. P. Irwin was the agent of the Southern Railway during the whole of the period between 1894 and 1900.

"c. That he learned from Mr. W. P. Irwin, agent of the Southern Railway, that it was the duty of the railroad company to do this work.

"d. That subsequent to the first of July, 1900, after the plaintiff had quit the work, that Mr. Irwin told him that it was the duty of the railroad company to do this work.

"e. That the railroad company paid the plaintiff for doing this work after July, 1900, and after the plaintiff had lost his job as mail messenger and at some subsequent time had resumed these duties as mail messenger.

"f. In allowing plaintiff to testify to transactions and conversations had between himself and Mr. W. P. Irwin, agent of the Southern Railway Company, after July, 1900, and in reference to the duties of the railroad company in transferring the mail, and in reference to the employment of plaintiff to act as transfer clerk at a time subsequent to July, 1900.

"The errors being, as it is respectfully submitted:

"1. In that this testimony was incompetent, in that no authority was shown on the part of Mr. Irwin to direct plaintiff to do this work or to make any statements, or to bind the railroad company in any way in reference to this work or to make any contract concerning it.

"2. That these conversations and transactions not being a part of the *res gestae,* were hence incompetent.

"3. That these conversations and statements between Irwin and the plaintiff were hearsay and hence incompetent.

"(2) In allowing the plaintiff to testify that complaints came to him through Mr. Irwin in reference to matters concerning the handling of the mail at Spartanburg.

"The error being, as it is respectfully submitted, that this was incompetent, in that it was not shown that there was any authority on the part of Mr. Irwin to bind the railroad, or that Mr. Irwin was talking to Blowers or making complaint to Mr. Blowers as a servant of the railroad, but, on the contrary, that at said time it was understood by both Blowers and Irwin that Blowers was in the employ of the Government."

(a). With reference to this specification the Circuit Judge ruled that the witness had a right to say under whose direction he performed the work, if he knew of his own knowledge that the person referred to was the agent of the defendant, but whether or not that person acted within the scope of his authority was a different proposition. It is now the accepted general rule that the fact that one is the agent of a corporation may be proven by parol as in the case of private persons, 3 Elliott on Ev., sec. 1629. Where agency may be shown by parol, one having knowledge of the fact of agency may testify to the fact, 3 Elliott on Ev., sec. 1638. The witness answered that the work was done under the supervision and direction of "W. P. Irwin, agent of Southern Railway." The question and answer under the qualification stated by the Court were properly admitted.

(b) There was really no contest that W. P. Irwin was station agent for defendant company at Spartanburg, S. C., during the period mentioned. W. P. Rider, who was superintendent of the defendant railroad between Charlotte and Spartanburg from July, 1894, to July, 1900, testified for defendant that W. P. Irwin was the principal or chief representative of the defendant at Spartanburg, that he was station agent, responsible for the organization of his station

15—74

appertaining to the receiving and delivery of freight, that to a certain extent, but not altogether, he had charge of all employees at that station, but that he was not authorized to employ a transfer clerk for the mail, that when a complaint was lodged with him as to misplaced mail pouches at the Spartanburg station, he would write to W. P. Irwin as the best channel to reach the person responsible. W. P. Irwin testified that he had been agent for the defendant at Spartanburg depot for nearly thirty years up to 1903, that he had no authority over plaintiff and did not exercise any, that prior to July, 1900, he had no knowledge that it was the duty of the railroad company to transfer the mail, that he acquiesced in the plaintiff doing the work under the belief that he was doing it for the Government, that the defendant company furnished a room wherein to place the mail pouches, that when irregularities occurred with reference to the misplacing or missending of mail pouches and complaint was lodged with the superintendent, the superintendent would send to him for a report and that he would go to plaintiff for explanation and report back to superintendent, that when plaintiff ceased to do the work of transferring mail in July, 1900, he (Irwin) paid another man to do the work who proved unsatisfactory, then he hired Mr. Pollard and he proved unsatisfactory, then he hired the plaintiff, an efficient man. It is thus made manifest that the real question was not whether W. P. Irwin was agent of the defendant during the period named, but whether his authority then extended to the matter of directing, supervising or employing a mail transfer clerk. This point of defendant's contention was carefully guarded in the ruling of the Court and in the instructions to the jury.

(c) and (d). Since there is no dispute that it was the duty of the defendant company to do the work of transferring mail from one to another of its trains, it is of no consequence that plaintiff learned this fact from W. P. Irwin.

(e) and (f). The fact that Irwin employed mail transfer clerks, who were paid by defendant, after July, 1900, includ-

ing the employment of plaintiff, was relevant as tending to throw light on the question whether he had such authority previous to July, 1900. "The course of dealing between the parties through the alleged agent is generally relevant and admissible upon the question of agency and its extent  *  *  *.  The accepted acts of an agent or officer of a corporation are always evidence to show the extent of his powers."  3 Elliott on Ev., sec. 1634.

With reference to exception 2, it is only necessary to say, in addition to what has been said, that there being evidence tending to show agency of Irwin with respect to supervising the transfer of mail, it was for the jury to say whether Irwin's dealings with plaintiff were within the scope of his agency.

Speaking generally with reference to these exceptions, there was no attempt to prove the agency of Irwin by his declaration but by his acts and course of dealing touching matters appertaining to the transaction of the defendant's business. If it was within the scope of Irwin's agency to employ, or direct, or supervise, mail transfer employees in the conduct of defendant's business which included the transportation of mails, then any knowledge which Irwin had that plaintiff was performing this work is imputable to the defendant. But plaintiff's case does not rest upon the knowledge and acquiescence of Irwin, but upon the knowledge and acquiescence of defendant, presumed to know that its work of transferring the mail was being performed by some one.

Under the third exception error is assigned because the Court refused to charge the following request: "In this case, even if the plaintiff did do the work that the railroad company ought to have done, yet, if in making his estimates when he bid for the work of 'mail messenger' he took into consideration the transferring of the mail from one train or car to another, and made his estimates to cover this work and received pay from the Government on this basis and did this work for the Government and believing he was receiving full compensation for doing

this work, then he cannot recover in this action from the defendant, even though it now appears that this was work that the defendant really ought to have performed."

The request was erroneous, for two reasons: (1) There was no evidence that the Government had paid plaintiff for doing this work of transferring mail from train to train, but paid him for performing services as mail messenger from post office to train and vice versa.   (2) If plaintiff, while acting as mail messenger and mistaking his duty, performed the services of transfer clerk for defendant and defendant had knowledge of this mistake and received the benefit of such services, defendant could not escape liability to pay reasonable compensation therefor merely because the plaintiff believed he was doing work for the Government.

An exception is taken to the following charge: "I charge you further as a matter of law, if the station agent was authorized by any superior officer who had authority to make this contract and he was carrying out the orders of his superior officer and made a contract that would be within the scope of his authority, and the railroad agent, if he is acting under the direction or by the authority of a superior officer who had power and whose duty it was to attend to these matters and make such contracts, if he acted under his orders and direction, then the acts of the agent here would be acts of the superior officer."

The specifications of error being: (1) That an agent or officer to whom authority is delegated cannot delegate the authority to another.   (2) There was no evidence that any superior officer of defendant company was authorized to make a contract with plaintiff to transfer the mail.   We are not sure from the record but that this charge was made at the request of the defendant, and if so, defendant cannot raise objection thereto.   But assuming that the charge was not made at the request of defendant, we see nothing in it prejudicial to defendant's contention.   The principle *delegatus non potest delegare* does not apply when there is express or implied authority in the general or superior agent

to employ sub-agents in the work of the principal. "Where an agent has power to employ a sub-agent the acts of the sub-agent, or notice given in the transaction of the business, have the same effect as if done or received by the principal." *Bates* v. *American Company,* 37 S. C., 101, 16 S. E., 883. The authority to employ sub-agents may be implied from the nature of the duties and powers committed to the general agent. 1 Ency. Law, 981. In this case, the superior agent and the alleged sub-agent were both engaged in the work of the principal in the matter of transportation, and the sub-agent from the nature of his position and duties was under the direction and supervision of the superior agent in the matter of mail transportation when it became a part of the principal's business. Under such circumstances, if the sub-agent acts under the orders of a superior officer his acts become the acts of the superior officer and the principal as well. There was some evidence that the general superintendent of transportation had control of the matter of mail transfer and in the direction and supervision of mail transfer clerks as already indicated. The charge as a whole very carefully instructed the jury with respect to the acts of the station agent, as these extracts from the charge will show:

"A mere station agent has no authority to bind a railroad company by entering into contracts, either express or implied, in behalf of the company, unless it is shown by proof that such agent was authorized to make such contract."

"In this case the railroad company is not bound by any act or words of its station agent, unless the plaintiff has shown by satisfactory evidence that the railroad company authorized and employed its station agent to act in such a way as to make a contract in its behalf."

"If the plaintiff in this case undertakes to bind the railroad company by any contract, express or implied, which he claims was made with the station or depot agent of the defendant, then before he can recover under such contract he must show to the jury by satisfactory proof that the station

agent was authorized to make such contract, and if he has not shown that, then he cannot bind the defendant by any acts or words of such station agent."

The remaining exceptions charge error in refusing a new trial. Having no jurisdiction to review questions of fact, we will not consider whether in our view of the testimony the verdict is excessive in amount or contrary to the weight of the testimony, hence we need not further notice the fifth, sixth and seventh exceptions.

The real contention of the appellant is represented by the fourth exception, as follows: "Because his Honor having instructed the jury that the plea of the statute of limitations was a good plea, and having instructed the jury that plaintiff could not recover for a period further back than six years prior to the commencement of his action, the jury in rendering a verdict for $1,750 failed to follow the instructions of the Court and rendered a verdict out of proportion to the amount sued for; and it was error in his Honor not to set aside said verdict, or at least not to have granted a new trial *nisi*."

This exception is meritorious. In response to defendant's plea of the statute of limitations, the Court expressly charged the jury: "If you think plaintiff is entitled to recover you cannot allow him compensation for more than six years preceding the filing of the summons, which was filed on the 31st day of March, 1903; you cannot go any farther back than six years from that time." The complaint sought recovery for plaintiff's services, six years, from July 1, 1894, to July 1, 1900, alleged to be reasonably worth $1,990. This was tantamount to alleging that plaintiff's services were reasonably worth $27.63 per month or ninety and 86-100 cents per day. The plaintiff testified that his services were worth $1.50 per day. But the testimony further showed that after plaintiff ceased to act as said transfer clerk, July 1, 1900, the defendant employed successively two other persons and then the plaintiff to perform the same services at $20 per month. Under the charge of the Court,

plaintiff could only recover for 1,186 days services, the statute barring claim for 1,004 days remaining of the six years. The verdict of the jury for $1,750 was equivalent to allowing plaintiff $1.47 per day as the value of his services for the 1,186 days not barred, if they regarded the instructions of the Court; but by this same process of reasoning, if the value of plaintiff's services was $1.47 per day, then for 1,004 days excluded under the statute, the sum of $1,475.88 should have been deducted from the sum claimed, thus leaving $514.12 as the sum recoverable under the complaint. There is nothing in the complaint or evidence to suggest that the services were more valuable per day during the 1,186 days than during the 1,004 days. This demonstrates that the jury could not have rendered the verdict they did and at the same time give full effect to the charge of the Court. The greatest sum which could have been rendered against the defendant under the pleadings, evidence and charge was $1,077.68, which bears the same proportion to the amount claimed in the complaint, $1,990, as the time not barred, 1,186 days, bears to the whole time, 2,190 days. When the jury disregards the instructions of the Court, a new trial should be granted. *Buist Co.* v. *Lancaster Mercantile Co.*, 68 S. C., 523, 47 S. E., 978.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and a new trial granted, unless the plaintiff within thirty days from the filing of the remittitur herein shall remit from the judgment entered the sum of $672.32.