# ST. LOUIS SOUTHWESTERN RAILWAY COMPANY ET AL. *v.* UNITED STATES AND INTERSTATE COMMERCE COMMISSION.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF KENTUCKY.

No. 199. Argued October 12, 15, 1917.—Decided November 12, 1917.

Meanings and relations of the terms "through route," "through rate," "joint rate," "sum of the locals," "division of joint rate," "rate-breaking point" and "combination rate" explained and defined.

Railroad companies, which, though chartered by different States, are all operating interstate railroads and otherwise engaged in interstate commerce, and which have established a through route between interstate points with a through rate consisting of the sum of the local rates, or of a combination of a local rate with a joint rate to an intermediate point, are not deprived of their rights under the Fifth Amendment when required, by an order of the Interstate Commerce Commission, to substitute a joint through rate (of reasonable amount) for the through rate thus existing, and to maintain the same through route or, at their election, substitute a modification of it which the Commission has found preferable.

Such an order is within the power conferred upon the Commission by the Act to Regulate Commerce, as amended.

The Commission's order, establishing through routes and a joint rate on logs and lumber from the "blanket territory" of Arkansas to Paducah, Kentucky, which permitted complaining carriers to maintain their route via Cairo, Illinois, or to substitute a route via Memphis, Tennessee, which the Commission found to be the more natural one, the joint rate fixed by the Commission to be the same in either case, is consistent with that provision of § 15 of the Act to Regulate Commerce, forbidding the Commission to embrace in a through route "less than the entire length" of a railroad "unless to do so would make such through route unreasonably long."

The power of Congress and of the Commission to prevent interstate carriers from discriminating against a particular locality applies to carriers the lines of which do not reach the locality but which bill through traffic to it over connecting lines.

An order of the Commission requiring carriers to reduce existing through rates by establishing joint rates, or, in the alternative, new through routes with joint rates, rests on § 15 of the Act to Regulate Commerce. It is not to be regarded as primarily an order to remove discrimination in violation of § 3, even though discrimination in rates as between two localities may have furnished the occasion for the complaint upon which the Commission acted and may have afforded reason for the rate fixed by its order.

234 Fed. Rep. 668, affirmed.

THE case is stated in the opinion.

*Mr. Henry G. Herbel*, with whom *Mr. Daniel Upthegrove, Mr. John R. Turney, Mr. Fred G. Wright, Mr. W. F. Dickinson, Mr. W. T. Hughes* and *Mr. Henry Moore* were on the briefs, for appellants.

*Mr. Assistant Attorney General Frierson*, with whom *Mr. Alex Koplin* was on the briefs, for the United States.

*Mr. Charles W. Needham*, with whom *Mr. Joseph W. Folk* was on the brief, for the Interstate Commerce Commission.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

This suit was brought in the District Court of the United States for the Western District of Kentucky by three railroad companies [1] against the United States and the Interstate Commerce Commission. Plaintiffs seek to enjoin the enforcement of and to set aside an order entered by the Commission on January 21, 1916, directing these and other carriers to establish certain through routes and joint rates on logs and lumber to

[1] A fourth carrier, the Louisiana & Arkansas Railway Company, was permitted to intervene as party plaintiff and joined in the appeal; but the special facts concerning it are not of importance.

Paducah, Kentucky, and reducing existing rates. An application was made for a temporary injunction. Both defendants moved to dismiss the bill. The Commission also answered. The case was fully heard upon the evidence before three judges "as upon final submission upon the merits"; a decree was entered dismissing the bill without costs (234 Fed. Rep. 668); and the case comes to this court by direct appeal.

Paducah is situated on the south bank of the Ohio River, 42 miles above Cairo, Illinois, which lies on the north bank of the Ohio near its confluence with the Mississippi. An important business in each city is manufacturing and jobbing lumber. They compete in both the buying and the selling markets. Each draws its supplies of logs and lumber, in part, from the extensive region lying west of the Mississippi and south of the Arkansas River, known in the trade as the "blanket territory." [1] The distances from this region to Paducah are not greater than to Cairo; but, prior to the order of the Interstate Commerce Commission herein complained of, the through freight rate on logs and lumber was 22 cents per hundred pounds to Paducah while it was only 16 cents to Cairo.

The principal railroads serving the "blanket territory" are the St. Louis and Southwestern, the St. Louis, Iron Mountain and Southern, and the Chicago, Rock Island and Pacific. The first two have their own lines from the "blanket territory" to Cairo; but can reach Paducah only over a connecting line. The Rock Island reaches both Cairo and Paducah only over a connecting line. The most direct route to Paducah from the lines of each

[1] This region is called "blanket territory," because a "blanket" rate on logs and lumber is made from all shipping points within the territory to points beyond. That is, the rate is the same regardless of the distance hauled *within* the territory, which extends about 400 miles from north to south and 300 from east to west.

of the three complainants is via Memphis, Tennessee; but
prior to the order of the Interstate Commerce Commis-
sion herein complained of only the Rock Island had es-
tablished its through route via Memphis.   The other
two companies had through routes to Paducah via Cairo.
These, which had been in operation for many years, are
materially longer than possible routes via Memphis; and
also necessitate crossing the Ohio as well as the Mississippi.
Both the Cairo and the Memphis routes to Paducah in-
volve using as connecting carrier the Illinois Central,
which has a line extending from Memphis through Padu-
cah to Cairo.[1]   The 22-cent rate from the "blanket ter-
ritory" to Paducah via Cairo is made by adding to the
"joint rate" or "local" of 16 cents to Cairo, the local
rate of 6 cents from Cairo to Paducah, Cairo being a
"rate-breaking" point.[2]   The connection of the Rock

---

[1] The distance on the Illinois Central from Memphis to Paducah is
about 169 miles.   The Nashville, Chattanooga and St. Louis Railroad
also has a line from Memphis to Paducah, but it is much longer.

[2] A "through route" is an arrangement, express or implied, be-
tween connecting railroads for the continuous carriage of goods from
the originating point on the line of one carrier to destination on the
line of another.   Through carriage implies a "through rate."   This
"through rate" is not necessarily a "joint rate."   It may be merely
an aggregation of separate rates fixed independently by the several
carriers forming the "through route"; as where the "through rate"
is "the sum of the locals" on the several connecting lines or is the
sum of lower rates otherwise separately established by them for through
transportation.   *Through Routes and Through Rates*, 12 I. C. C. 163,
166.   Ordinarily "through rates" lower than "the sum of the locals"
are "joint rates."   Prior to the amendment of the Act to Regulate
Commerce (1906, c. 3591, § 4, 34 Stat. 584, 590) authorizing the Com-
mission to establish through routes and joint rates, all "joint rates"
were (as most still are) the result of agreements between carriers,
which fix also the "divisions"; that is, the share of the "joint rate"
to be received by each.   *New York, New Haven & Hartford R. R. Co.* v.
*Platt,* 7 I. C. C. 323, 329.   The bases of such divisions differ greatly
in practice.   Sometimes all the carriers participate in the joint rate
in the proportions which their local rates bear to the sum of the locals;

Island with the Illinois Central at Memphis is made under similar conditions.

On February 8, 1915, the Paducah Board of Trade filed with the Interstate Commerce Commission a complaint charging (1) that the 22-cent rate to Paducah was unjust and unreasonable; (2) that it was discriminatory and gave an undue preference and advantage to Cairo; and (3) that the route from the "blanket territory" via Cairo was unduly long as compared with the route via Memphis. The complainant asked that through routes be established via Memphis "with joint rates . . . which shall not exceed the rates contemporaneously charged for the transportation of logs and lumber from the same points to Cairo."

Fifty-three railroads, which participate in this traffic, including those named above, were joined as respondents. Hearings were duly had; much evidence was introduced;

---

in other words, the percentage of reduction from the local rate is the same for each. Sometimes one carrier is allowed the full local, while the rate of another is seriously reduced. The share of each being a matter of bargain, it may be fixed at an arbitrary amount. *Chamber of Commerce of Milwaukee v. Flint & Pere Marquette R. R. Co.*, 2 I. C. C. 553, 567-8. In constructing the joint rates the charge per mile ordinarily decreases with the increase of the length of haul. But even where the through route and through rates are matters of express agreement between the carriers, a continuous "joint rate" does not always extend from the point of origin to point of destination. There may be, on the "through route," an intermediate point at which, in common railroad practice, the rate "breaks." That is, the "joint rate" from the point of origin ends at this "rate-breaking point" and there is charged for the distance beyond the same local rate or joint rate that would have been charged had the business originated at this intermediate point. That is, instead of a "joint through rate," there is a "combination." The so-called "Ohio River crossings" or "gateways" are among the "rate-breaking" points. See *Rates on Lumber from Southern Points*, 34 I. C. C. 652, 654; *Lehigh Portland Cement Co. v. B. & O. S. W. R. R. Co.*, 35 I. C. C. 14, 17; *Interstate Commerce Commission v. Chicago, Rock Island & Pacific Ry. Co.*, 218 U. S. 88, 90.

and on January 21, 1916, the Commission filed a report in which it found:

(*a*) That the 16-cent rate to Cairo was not unduly low;

(*b*) That the 22-cent rate to Paducah was unreasonable to the extent that it exceeded the existing rate to Cairo;

(*c*) That the existing disparity of rates gave to Cairo an undue preference and advantage over Paducah;

(*d*) That the distances to Paducah via Cairo were so much greater than the distances via Memphis "that the natural route is via Memphis rather than via Cairo";

(*e*) That through routes and joint rates not higher than the Cairo rate should be established from the "blanket territory" to Paducah via either Memphis or Cairo.

An appropriate order was entered prohibiting the carriers from continuing to charge the existing rate to Paducah and directing them to establish and thereafter maintain through routes to Paducah via either Memphis or Cairo, and joint rates "not in excess of the rates at present in effect . . . to Cairo." *Paducah Board of Trade* v. *Illinois Central R. R. Co.*, 37 I. C. C. 719.[1]

Before the effective date of the order, this bill was filed. It sets forth sixteen reasons for holding the order void; and most of them are repeated in the assignment of errors in this court. One is a charge, left wholly unsupported by evidence, that a 16-cent rate to Paducah is confiscatory. Eight deal with the sufficiency or weight

[1] The log and lumber rates from blanket territory to Cairo and Paducah or competitive points had been investigated by the Commission also in earlier proceedings. *Rates on Lumber from Southern Points*, 34 I. C. C. 652; *Wisconsin & Arkansas Lumber Co.* v. *St. Louis, Iron Mountain & Southern Ry. Co.*, 33 I. C. C. 33; *Paducah Board of Trade* v. *Illinois Central R. R. Co.*, 29 I. C. C. 583; *Lumberman's Exchange of St. Louis* v. *Anderson & Saline River R. R. Co.*, 24 I. C. C. 220; *Chicago Lumber & Coal Co.* v. *Tioga Southeastern Ry. Co.*, 16 I. C. C. 323; *Central Yellow Pine Association* v. *Illinois Central R. R. Co.*, 10 I. C. C. 505. See also *St. Louis, Iron Mountain & Southern Ry. Co.* v. *United States*, 217 Fed. Rep. 80.

of the evidence before the Commission, of which there was ample to sustain its findings. Some relate to the form of the order, which was clearly appropriate. Few, only, of the errors assigned require discussion here.

*First:* The carriers deny that the Commission has the power to compel them to establish through routes and joint rates. It is admitted that all the complaining carriers were interstate railroads and were engaged otherwise in interstate commerce. It is undisputed that for many years there has been over the lines of two of these carriers a through route to Paducah via Cairo, and over the other a through route via Memphis; and that on all the lines there were through rates. But it is contended that if a carrier establishes a through route and joint rate with its connections, it creates in effect a relation of partnership; that this relation must be entered into, if at all, voluntarily; and that to "compel a carrier chartered by a State" to enter into such a relation with a carrier chartered in another State violates the Fifth Amendment of the Federal Constitution.

The complaining carriers having engaged in this particular commerce, it is clear that Congress has power to regulate it. *Atlantic Coast Line R. R. Co.* v. *Riverside Mills,* 219 U. S. 186. No reason appears why the regulation might not take the form of compelling the substitution of a joint rate for a through rate made by a combination of local rates or by a combination of a local rate with a joint rate to an intermediate point. *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Interstate Commerce Commission,* 162 U. S. 184. So far as the order relates to the existing routes via Cairo and Memphis respectively it did no more than this. It substituted for the through rate of 22 cents (made up on two of the lines of a combination of a joint rate or local rate of 16 cents to Cairo with a local rate on the Illinois Central of 6 cents from Cairo to Paducah), a joint rate of 16 cents from

the "blanket territory" to Paducah; thus reducing the existing through rate. The carrier connecting at Cairo (the Illinois Central) and all but one of the carriers connecting with these complainants in the "blanket territory" acquiesced in the order establishing this joint rate. The Illinois Central's share of the 22-cent rate was its local rate of 6 cents. If these complaining carriers cannot reach satisfactory agreements with the Illinois Central as to what its share of the 16-cent rate should be, they may, under § 15 of the Act to Regulate Commerce, apply to the Commission for an appropriate order. In respect to the Rock Island the situation is similar.

The order entered does not require any complaining carriers to substitute the route via Memphis for that via Cairo; nor does it require any to establish an additional route via Memphis. Carriers are left free to furnish the through transportation either via Cairo or via Memphis. The order merely compels a through route and a joint rate of 16 cents to Paducah. If they elect to continue the existing through route via Cairo, the order operates merely to introduce reduced joint rates. If they elect to discontinue the through routes via Cairo, the order operates to establish through routes and joint rates via Memphis, which the findings of the Commission fully justify.

That Congress has power to authorize the Commission to enter an order for through routes and joint rates, like that here complained of, has been heretofore assumed.[1] No reason is shown for questioning its existence now. The provisions of the Act to Regulate Commerce as amended (1887, c. 104, §§ 1, 12, 15, 24 Stat. 379; 1906, c. 3591, § 4, 34 Stat. 584; 1910, c. 309, § 12, 36 Stat. 539, 552) are also appropriate to confer this authority upon

---

[1] *O'Keefe* v. *United States*, 240 U. S. 294; *Interstate Commerce Commission* v. *Northern Pacific Ry. Co.*, 216 U. S. 538.

the Commission. And there is no foundation in fact or law for the contention of complainants that the Commission disregarded the provision of § 15, by which it is prohibited from embracing in a through route "less than the entire length" of a railroad "unless to do so would make such through route unreasonably long." Whether a carrier engaged solely in intrastate commerce could be compelled by Congress to enter interstate commerce; or even whether a carrier, having entered into some interstate commerce, may be compelled to enter into all, we have no occasion to consider; [1] for the complaining carriers had voluntarily entered into the particular class of interstate commerce with Paducah to which alone the order related.

*Second:* Carriers insist also that the order is void on the ground that, since their "rails do not reach Paducah, they cannot be guilty of discrimination against that city." They, however, bill traffic via Cairo or Memphis through to Paducah in connection with the Illinois Central, thus reaching Paducah, although not on their own rails. And, thereby, they become effective instruments of discrimination. Localities require protection as much from combinations of connecting carriers as from single carriers whose "rails" reach them. Clearly the power of Congress and of the Commission to prevent interstate carriers from practicing discrimination against a particular locality is not confined to those whose rails enter it. *Cincinnati, New Orleans & Texas Pacific Ry. Co.* v. *Interstate Commerce Commission, supra.*

Furthermore, the order in the case at bar is not merely

---

[1] But see *Michigan Central R. R. Co.* v. *Michigan Railroad Commission,* 236 U. S. 615, 631; *Minneapolis & St. Louis R. R. Co.* v. *Minnesota,* 186 U. S. 257; *Wisconsin, Minnesota & Pacific Railroad* v. *Jacobson,* 179 U. S. 287. Compare *Norfolk & Western Ry. Co.* v. *Dixie Tobacco Co.,* 228 U. S. 593, 595; *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Wallace,* 223 U. S. 481, 491.

one to prevent discrimination. Orders to remove discrimination, as commonly framed, do not fix rates. They merely determine the relation of rates, by prohibiting the carrier from charging more for carriage to one locality than under similar conditions to another; and they usually leave the carriers free to remove the discrimination either by raising the lower rate or by lowering the higher rate or by doing both. *American Express Co.* v. *Caldwell,* 244 U. S. 617, 624. The order here complained of gives the carriers no such option. It directs that the rates to Paducah shall be "not in excess of the rates at present in effect from the same points or groups to Cairo, Ill." In other words, the Commission, having found the 22-cent rate unduly high, reduces it to 16 cents, by establishing joint through rates. The injury resulting from discrimination was doubtless the reason which induced the Paducah Board of Trade to institute the proceedings; and the Commission may have considered the existence of the lower rate to Cairo persuasive evidence that the 22-cent rate to Paducah was unreasonably high and the resulting discrimination strong reason for establishing the 16-cent joint rate. But the order is strictly one under § 15 of the Act to Regulate Commerce to reduce existing through rates by establishing joint rates or, in the alternative, to establish new through routes with joint rates. It is not primarily an order to remove discrimination in violation of § 3.

*Decree affirmed.*