SOUTH CAROLINA STATE PORTS
AUTHORITY, Plaintiff,
v.
SEABOARD AIR LINE RAILROAD
COMPANY and North Charleston Ter-
minal Company, Defendants.

SOUTH CAROLINA STATE PORTS
AUTHORITY, Plaintiff,
v.
SOUTHERN RAILWAY COMPANY and
North Charleston Terminal Com-
pany, Defendants.

SOUTH CAROLINA STATE PORTS
AUTHORITY, Plaintiff,
v.
ATLANTIC COAST LINE RAILROAD
COMPANY and North Charleston
Terminal Company, Defendants.

Nos. 3751, 3752, 3754.

United States District Court
E. D. South Carolina,
Charleston Division.

Sept. 23, 1954.

Robert McC. Figg, Jr., Charleston, S. C., D. W. Robinson, Jr., Columbia, S. C., for plaintiff.

Buist & Buist, Charleston, S. C., James S. Cremins, Norfolk, Va., for defendant Seaboard Air Line R. Co.; Barnwell & Whaley, Charleston, S. C., for defendant Southern R. Co.; Hagood, Rivers & Young, Charleston, S. C., for defendant Atlantic Coast Line R. Co.; Coming B. Gibbs, Charleston, S. C., for defendant North Charleston Terminal Co.

WYCHE, District Judge.

These actions were removed from the Court of Common Pleas for Charleston County, South Carolina, under Section 1441(a), U.S.C.A., Title 28, which authorizes the removal of "any civil action * * * of which the district courts of the United States have original jurisdiction * * *." The question has arisen whether they are actions of which this Court has original jurisdiction, and the actions have been consolidated for the purpose of its determination.

At the outset it must be remembered that the United States District Court is a court of limited, not of general, jurisdiction; all presumptions are against the jurisdiction of a United States District Court so that the facts disclosing the jurisdiction must affirmatively appear upon the record; jurisdiction cannot be conferred by the mere consent of the parties to the suit and the question of jurisdiction, whether or not raised by the parties, is always, during the progress of the case, before the fed-

eral courts, both trial and appellate. Dobie on Federal Procedure, Section 16, page 25.

■ "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248.

The petitions for removal allege that diversity of citizenship exists between the plaintiff and the petitioners, and also that the actions arise under the Interstate Commerce Act, § 1 et seq., U.S. C.A., Title 49, and are removable under §§ 1331 and 1337, U.S.C.A., Title 28.

The removing defendants Seaboard Air Line Railway Company, Southern Railway Company and Atlantic Coast Line Railroad Company are corporations created by the laws of states other than the State of South Carolina.

The plaintiff South Carolina State Ports Authority was created by legislation of the State of South Carolina. South Carolina Code of Laws 1952, § 54–1 et seq. It is governed by a board, the members of which are appointed by the Governor, with the advice and consent of the Senate. It has the powers of a body corporate, including the power to sue and be sued. Its property is not subject to any taxes or assessments, and "all net * * * earnings not necessary or desirable for the operation of its business shall be held subject to the further action of the General Assembly." The General Assembly has annually appropriated in the State's general appropriation acts for its operation since 1942, the year in which it was created, including a total of $750,000 appropriated specifically for "Operating Capital and Maintenance of Port Facilities." 44 St. at Large, pp. 1669, 1723; 45 St. at Large, pp. 683, 2177.

Section 54–11, Code of Laws of South Carolina 1952, provides that "Through the Authority the State may engage in promoting, developing, constructing, equipping, maintaining and operating the harbors or seaports within the State, namely Beaufort, Charleston and Georgetown, and works of internal improvement incident thereto, including the acquisition or construction, maintenance and operation at such seaports of * * * terminal railroads, as well as other kinds of terminal facilities, * * *." Section 54–13 provides that "The Authority is created as an instrumentality of the State for the accomplishment of" general purposes which include development and improvement of the harbors or seaports of Beaufort, Charleston and Georgetown for the handling of waterborne commerce from and to any part of the State and other states and foreign countries and the fostering of the shipment of freight and commerce through said ports, whether originating within or without the State. It is given broad power of eminent domain, and under Section 54–17 it may take, exclusively occupy, use and possess, insofar as may be necessary to carry out its functions, any areas of land owned by the State, not in use for State purposes, in the counties in which the State's seaports lie, including swamps and overflowed lands, bottoms of streams, lakes, rivers, bays, the sea and arms thereof and other waters of the State and the riparian rights thereto pertaining.

Like the South Carolina Public Service Authority (which was created earlier by similar legislation, S.C.Code of Laws, 1952, § 59–1 et seq.), the plaintiff Authority, "as an agency of the State, is also in a real sense a part of the State, and shares in its sovereignty;" and "is completely identified with the State in the performance of its public functions, which are unquestionably of a governmental character." Rice Hope Plantation v. South Carolina Public Service Auth., 216 S.C. 500, 59 S.E.2d 132, 138, 139; Cf. South Carolina Elec. & Gas Co. v. South Carolina Public Service, 215 S.C. 193, 54 S.E.2d 777, 786.

■■ There is no statute which authorizes the removal of a suit between a state and citizens on the ground of di-

versity of citizenship, for a state cannot, in the nature of things, be a citizen of any state, Stone v. State of South Carolina, 117 U.S. 430, 6 S.Ct. 799, 29 L.Ed. 962; Query v. 206 Cases of Assorted Liquor, D.C., 49 F.Supp. 693, and the conclusion is inescapable that a suit by the South Carolina State Ports Authority is a suit by the State of South Carolina. Arkansas v. Texas, 346 U.S. 368, 74 S.Ct. 109, 98 L.Ed. ——; DuPont v. South Carolina Public Service Authority, D.C. E.D.S.C., 100 F.Supp. 778; Connor v. South Carolina Public Service Authority, D.C.E.D.S.C., 91 F.Supp. 262.

 Section 1331, U.S.C.A., Title 28, provides that the district courts of the United States shall have original jurisdiction of all actions wherein the matter in controversy exceeds the requisite jurisdictional amount "and arises under the Constitution, laws or treaties of the United States." Section 1337 confers original jurisdiction on district courts "of any civil action or proceeding arising under any Act of Congress regulating commerce * * *." Under these sections, jurisdiction does not rest on diversity of citizenship. Cf. Mulford v. Smith, 307 U.S. 38, 46, 59 S.Ct. 648, 83 L.Ed. 1092; Owens v. Greenville News-Piedmont, D.C., 43 F.Supp. 785.

The complaints in the instant actions allege that each of the defendant carriers is engaged in South Carolina in its business of transporting, as a common carrier, freight and passengers for hire, including the transportation of freight to and from points of origin or destination within the Charleston switching limits; that the North Charleston Terminals of the plaintiff are port facilities in the port of Charleston, being deep water terminals located on the Cooper River in the Charleston switching limits, to and from which oceangoing steamships operate and at which they receive and discharge freight; that such terminals consist in part of a freight or marshalling yard, with which the tracks of the several carriers are connected, and from which railroad tracks run to the dock and shipside thereon and to warehouses and industries located therein; that on various dates between April 28, 1947, and March 31, 1953, "the plaintiff, at the instance and request of" the carriers, "switched * * * loaded freight cars, some of said freight cars being moved by the plaintiff from the aforesaid freight or marshalling yard (to which said cars had been moved by the defendants" to shipside on the said dock and to the said warehouses, and to the said industries located therein, as a part of and in completion of their transportation under the bills of lading issued thereon, and some of said freight cars being moved by the said plaintiff from shipside on the said dock, and from the said warehouses, and from the said industries located therein, to the said freight or marshalling yard (from which they were then moved by the defendants) as a part of and beginning their transportation under the bills of lading issued thereon"; and "that the services rendered by the plaintiff to the defendants in the switching of the said freight cars, as aforesaid, were reasonably worth and of the value of" amounts set forth in each complaint obviously arrived at in proportion to the number of cars switched for each carrier, for recovery of which amounts the plaintiff seeks judgment.

The claims stated in the complaints are based upon implied contracts on the part of the defendants to pay the reasonable worth of the services alleged to have been rendered by the plaintiff at their request. Cf. Blowers v. Railway, 74 S.C. 221, 54 S.E. 368, 369 (in which the Court recognized and applied the principle that "'where one who is under no legal or moral obligation to do so renders services to another at his request, or with his knowledge and acquiescence, the law raises an implied promise on the part of the person receiving the services to pay what they are reasonably worth'"); Klebe v. United States, 263 U.S. 188, 192, 44 S.Ct. 58, 68 L.Ed. 244, in which the Court recognized that the law will imply a contract from the circumstances or acts of the parties. Costanzo Coal Min. Co. v. Weirton Steel Co., 4 Cir., 150

F.2d 929; City Ice & Fuel Co. v. Bright, 6 Cir., 73 F.2d 461.

The defendants allege in their petitions for removal, however, that they are carriers governed by and subject to the Interstate Commerce Act as to all freight moving in interstate commerce; that a large percentage of the cars which the plaintiff alleges it switches were moved by the defendants in interstate commerce; and that their movement, and the rates and charges applicable thereto, as well as the distribution of such charges among the line haul and switching carriers participating in their transportation, were subject to, and only to, the acts of Congress regulating commerce, and the regulations of the Interstate Commerce Commission relating to such matters, and the tariffs filed with the Commission.

They ask that the Court take judicial notice of these facts. Cf. Alabama Great Southern Ry. Co. v. American Cotton Oil Co., 5 Cir., 229 F. 11; Produce Terminal Realty Corp. v. New York, N. H. & H. R. Co., D.C.Mass., 116 F.Supp. 451; Pocahontas Term. Corp. v. Portland Bldg. & Const. Tr. C., D.C.S.D.Maine, 93 F.Supp. 217; Downey v. Geary-Wright Tobacco Co., D.C.E.D.Ky., 39 F.Supp. 33. This being done they contend that there is involved in the actions "a substantial controversy, namely, whether under the Acts of Congress regulating commerce the Plaintiff is entitled to receive * * * any amount, and if so, what amount, for the switching services alleged to have been performed by the plaintiff in respect of cars moving in interstate commerce; that an essential element of the plaintiff's cause of action, if any, is plaintiff's right, if any, under the Acts of Congress regulating commerce, to recover * * * for such switching services."

They also contend that under such facts the plaintiff is a "common carrier in interstate commerce", Cf. United States v. California, 297 U.S. 175, 56 S.Ct. 421, 80 L.Ed. 567, and that the plaintiff's claims, as to interstate cars, are in reality an effort to recover a part of joint rates established under the Interstate Commerce Act for the through transportation of such cars between points outside of South Carolina and points of origin or destination on the plaintiff's trackage.

In Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205, the Court stated: "It is not enough that grounds of jurisdiction other than diverse citizenship may be inferred argumentatively from the statements in the bill, for jurisdiction cannot rest on any ground that is not affirmatively and distinctly set forth."

To bring a case within Sections 1331 and 1337, supra, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action; the right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another; the controversy must be disclosed upon the face of the complaint, unaided by the answer or the petition for removal; the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense; and a suit does not arise under an act of Congress because prohibited thereby. Gully v. First Nat. Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Louisville & Nashville R. R. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126; Query v. 206 Cases of Assorted Liquor, supra. Cf. Barnhart v. Western Maryland Ry. Co., 4 Cir., 128 F.2d 709; Thompson v. Standard Oil Co. of New Jersey, 4 Cir., 67 F.2d 644, certiorari denied 292 U.S. 631, 54 S.Ct. 640, 78 L.Ed. 1485; Carolina & N. W. Ry. Co. v. Town of Lincolnton, 4 Cir., 33 F.2d 719.

In Thompson v. Standard Oil Co. of New Jersey, supra, the Court said at page 646 of 67 F.2d: "* * * but the jurisdiction of the inferior federal courts rests entirely upon the acts of Congress, and their provisions must be followed

even though the dividing line, which separates cases cognizable in the federal courts from those over which no jurisdiction is given, does not follow an entirely logical course. Particularly is this true of the federal removal statutes found in sections 28 to 39 of the Judicial Code, 28 U.S.C.A. §§ 71 to 82. * * * Since the Judiciary Act of 1887 and 1888, it has been the uniform holding of the Supreme Court that no case may be removed from a state to a federal court on the ground that it arises under the Constitution or laws of the United States, unless it might have been brought originally in a federal court upon that ground under Section 24(1) of the Judicial Code, 28 U.S.C.A. § 41(1). Therefore, a case is not now removable unless the plaintiff's declaration or bill shows by distinct averments that his cause of action, as distinguished from the defense thereto, is based upon a right under the Constitution or laws of the United States, or treaties made under their authority. * * *

"The result is that ofttimes a plaintiff has the choice of bringing his suit in either a state or a federal court when a federal question forms an ingredient of his case, whereas a defendant may be limited to the state court without the right of removal although his defense involves such a question."

▆ Neither the sufficiency of the complaint nor the merits of the claims asserted, or of any defense thereto, may be passed upon, since the Court's inquiry is limited solely to the question of jurisdiction. Bachman v. Seaboard Air Line R. Co., D.C.E.D.S.C., 80 F.Supp. 976.

Carriers engaged in transportation regulated by the Interstate Commerce Act do not derive their power to make contracts in relation thereto from that Act (although their exercise of such power may be regulated by it, or even in certain cases prohibited). In Cincinnati, N. O. & Tex. Pac. Railway v. Interstate Commerce Comm., 162 U.S. 184, 197, 16 S.Ct. 700, 705, 40 L.Ed. 935, the Court quoted with approval and adopted the following statement in Interstate Commerce Commission v. Baltimore & Ohio Railroad Co., C.C.Ohio, 43 F. 37: "'Subject to the two leading prohibitions that their charges shall not be unjust or unreasonable, and that they shall not unjustly discriminate, so as to give undue preference or disadvantage to persons or traffic similarly circumstanced, the act to regulate commerce leaves common carriers as they were at the common law, —free to make special contracts looking to the increase of their business, to classify their traffic, to adjust and apportion their rates so as to meet the necessities of commerce, and generally to manage their important interests upon the same principles which are regarded as sound, and adopted in other trades and pursuits.'" Cf. U. S. v. Fruit Growers Ex. Co., 279 U.S. 363, 49 S.Ct. 374, 73 L.Ed. 739.

▆ The rights alleged by the plaintiff in its complaints are based upon the power of the defendants to make contracts in the management of their business, a power possessed by them at common law apart from, although in many respects the exercise of such power is regulated by, the Act. The situation is not changed if the Court should take judicial notice of the facts alleged in the petitions for removal. That the Act may contain provisions constituting a defense to the plaintiff's actions on the implied contracts alleged would not make the actions arise under it. Louisville & Nashville R. R. v. Mottley, supra.

It may, of course, develop that the evidence when taken will establish circumstances from which it must be concluded that the course of dealings of the parties constituted the voluntary establishment of through routes by implied arrangement, cf. St. Louis S. W. Ry. Co. v. United States, 245 U.S. 136, 139, note 2, 38 S.Ct. 49, 62 L.Ed. 199; Thompson v. United States, 343 U.S. 549, 72 S.Ct. 978, 981, 96 L.Ed. 1134, and that Section 1(4) of the Act, § 1(4), U.S.C.A., Title 49, may be applicable thereto. But the complaint governs in considering the question of jurisdiction, and the complaint does not state a case only or neces-

sarily arising under Section 1(4), even if the plaintiff may rely thereon in support of its claims should the evidence so develop. Cf. Thompson v. Standard Oil Co. of New Jersey, supra.

■■■ In my opinion, this Court is without original jurisdiction of the actions on the face of the record, and they must be remanded to the State Court from which they were removed. § 1447 (c), U.S.C.A., Title 28.

It is, therefore, ordered that these actions be, and they hereby are, remanded to the Court of Common Pleas for Charleston County.