TAYLOR-FICHTER STEEL CONSTRUCTION Co., INC., Plaintiff, *v.* TRIBOROUGH BRIDGE AUTHORITY, Defendant.

First Department, April 26, 1934.

*M. Carl Levine,* for the plaintiff.

*William C. Chanler* of counsel [*Joseph L. Pascal* with him on the brief; *Paul Windels, Corporation Counsel*], for the defendant.

FINCH, P. J.   This is a controversy submitted to this court pursuant to the provisions of the Civil Practice Act (§§ 473, 546–548), upon an agreed statement of facts.

The question to be determined is solely one of law, namely, whether or not the defendant Triborough Bridge Authority has power under the act creating it and the facts here present to enter into a modification of a contract previously entered into with plaintiff after public letting.

The defendant is a public benefit corporation (Laws of 1933, chap. 145), created for the purpose of constructing a bridge spanning the East river from the borough of Queens to the boroughs of Manhattan and Bronx, crossing Ward's island and Randall's island.

The act creating Triborough Bridge Authority provides in part as follows: " § 8. Construction contracts.   The authority shall construct the bridges pursuant to a contract or contracts in the manner, so far as practicable, provided in the charter of the city for contracts of said city except where the estimated expense of a contract does not exceed ten thousand dollars such contract may be entered into without public letting, but failure to comply with this section shall not invalidate such contracts."

The defendant is to issue its negotiable bonds not exceeding $35,000,000, but neither the State nor the city assumes any liability therefor.   Arrangements have been made whereby the Federal Emergency Administration of Public Works will furnish the necessary funds for constructing the aforesaid bridge.   No funds, therefore, of the State, city or from any private concerns are involved in this proceeding.

The defendant duly advertised for bids for the construction of said bridge in so far as involved in this contract.   Plaintiff was the lowest bidder, and a contract was duly entered into between plaintiff and defendant on the 29th day of November, 1933, for a portion

of the work, the plaintiff agreeing to perform said work for the lump sum of $1,647,000. The defendant has found it necessary to reduce the cost of the bridge by an amount in excess of $7,500,000 by changing the plan from a four-car roadway to a two-car roadway, reducing the cost of plaintiff's work by some $305,000. The defendant has committed an anticipatory breach of the contract by refusing to allow the plaintiff to proceed with its contract, and has submitted to plaintiff a proposed agreement embodying the revised plan, which the plaintiff is willing to execute provided the defendant has the power to enter into such modified contract without public letting.

Defendant contends that it has the power to enter into the proposed contract and, therefore, in view of its offer to enter into the modified contract and plaintiff's willingness on its part to enter into such modified contract, claims it is not in default under the agreement of November 29, 1933. Plaintiff, on the other hand, claims a default because of lack of authority on the part of the defendant, and asserts a right to have its damages for breach of contract assessed by a jury.

The only question at issue, therefore, is whether or not the proposed agreement, Exhibit A in the printed record, if entered into by the parties, would be valid or invalid. Unless valid, plaintiff would run the risk of having its pay withheld. The basis of the objection of plaintiff is that a radical modification in the terms and specifications of the contract as originally let could not be entered into by defendant under the Greater New York Charter (§ 419) without public letting. This the defendant concedes. Plaintiff contends, further, that the Greater New York Charter is mandatory upon the defendant, whereas the claim of the defendant is that the act creating the defendant does not require strict compliance with the provisions of the charter, since it specifically provides that defendant " shall construct the bridges pursuant to a contract or contracts in the manner, so far as practicable, provided in the charter of the city for contracts of said city * * * but failure to comply with this section shall not invalidate such contracts."

By the above words the Legislature has clearly indicated its intention that strict compliance with charter provisions was not mandatory and that failure so to comply will not invalidate a contract. By the express wording of this section, therefore, the proposed contract is specifically validated. Furthermore, compliance with the charter is only required " so far as practicable." Since it is conceded, and is borne out by this record that all parties are acting with the utmost good faith, and there is no suspicion of

fraud or collusion, there can arise no future criticism. The situation here is practically identical with what the situation would be if this contractor had proceeded with the work and the same modification had become necessary when he was half through.

The record further shows that the modification here sought is made necessary by circumstances, and is not arbitrary. The defendant having instructed the plaintiff not to proceed, is clearly in default under its original contract. Two courses only lie before the defendant, either to enter into the proposed modification agreement and avoid a suit for damages, or to advertise for new bids and thus become answerable to the plaintiff in damages for the default under the original contract. This latter course, however, would cause great delay in the completion of a very beneficial public improvement and one entered into at this time for the purpose of turning unemployment into constructive helpfulness. It would be difficult to conceive of a situation which is better covered by the terms of the statute providing that the charter provisions shall not be complied with where it is not " practicable " so to do. To hold otherwise would " impede the usual and regular progress of the public business." (*Harlem Gaslight Co.* v. *Mayor, etc., of New York,* 33 N. Y. 309, 329.)

The question remaining is whether this court has power to render a declaratory judgment upon the agreed state of facts here presented. Section 546 of the Civil Practice Act is broad enough to include such a power.

Since the enactment of section 473, the Supreme Court has power to declare the " rights and other legal relations " of parties and its declaration, when given, has the force of a final judgment. The parties to this submission upon the state of facts existing here could, therefore, have maintained an action in the Supreme Court for a declaratory judgment of their rights. If so, then under sections 546–548 of the Civil Practice Act they are entitled to a determination of the controversy by this court, because the " question in difference " here " might be the subject of an action or special proceeding" in the Supreme Court. It seems to have been intended that this court might determine upon an agreed statement of facts any question with respect to which an action might be maintained in the Supreme Court. Moreover, where the facts are undisputed a submission of the controversy in the first instance to this court will avoid the unnecessary expense and delay involved in first litigating the question in the Supreme Court and then bringing it to this court by appeal. In addition, while it is true that the granting or withholding of a declaratory judgment lies in the court's discretion, we are of opinion that in the circum-

stances here disclosed, the matter being of sufficient public importance, discretion should be in favor of retaining jurisdiction.

It follows that judgment should be granted for the defendant in accordance with the submission.

O'MALLEY and UNTERMYER, JJ., concur; MERRELL and MARTIN, JJ., dissent and vote to dismiss the submission.

MERRELL, J. (dissenting). No action or proceeding has been brought in the Supreme Court to obtain a declaratory judgment pursuant to section 473 of the Civil Practice Act, and, therefore, upon a submission of controversy, the right to a declaratory judgment cannot be determined. (See Rules Civ. Prac. rule 210.)

We do not think the stipulated facts show the existence of any real " controversy " between the parties which may be submitted to this court under sections 546-548 of the Civil Practice Act.

It appears from the agreed statement of facts that on November 29, 1933, the plaintiff and the defendant entered into a contract for the construction of the towers and anchorage cable bents required in the construction and erection of a bridge over the East river from the borough of Queens to the boroughs of Manhattan and The Bronx, over and across Ward's island and Randall's island in said river, and which construction of towers and anchorage cable bents was in accordance with plans and specifications therefor, and for which the defendant agreed to pay the plaintiff the sum of $1,647,000, besides the sum of $14,000 for ornamental work, in the manner and upon the terms and conditions set forth in said contract. The defendant *did not* advertise for bids for the construction of said bridge, but only for the small part thereof upon which plaintiff was the low bidder. Bids for the main part of the bridge and contracts therefor are yet to be advertised and let. The work awarded to plaintiff was to be done pursuant to the terms of said contract and to be financed from moneys obtained by the defendant upon loans and grants from the Federal Emergency Administration of Public Works. It is stipulated that the plaintiff, pursuant to such contract, duly entered upon the performance thereof; that since the making of the award to the plaintiff there has been a change in the membership of the commission constituting the defendant Triborough Bridge Authority and in the engineering staff, and that the defendant, as now constituted, in an effort to reduce the cost, evolved a new plan or design which it is expected will cause a saving in excess of $7,500,000 in the expense of erecting the bridge; that the new plan and design changed the drawings which were part of the plaintiff's contract, principally by eliminating therefrom two upright columns, thereby

changing basically the design of the bridge from one of a tower of four upright columns and two levels of roadway, to one of two upright columns with only one level of roadway, together with corresponding changes in the anchorage cable bents, and also requires the conforming of the fabrication and erection of steel to said revised plan. It is further stipulated that the parties hereto agreed that the fair and reasonable value of performing the plaintiff's contract in accordance with the changes aforementioned is the sum of $1,345,000, instead of $1,647,000, as to division I, and the sum of $11,000, instead of $14,000, as to division II, concerning the ornamental work; provided the defendant pays to plaintiff in addition thereto the sum of $60 per ton for materials rolled or rolled and fabricated which cannot be used advantageously in furtherance of the revised design, said material to belong to plaintiff; and provided further that plaintiff is relieved of payment of the cost of inspection. In the agreed stipulation of facts section " K " of the contract is set forth, as follows: " (K) This contract and the specifications herein contained and the plans hereinafter referred to, may be modified and changed from time to time as may previously be agreed to in writing between the parties hereto, in a manner not materially affecting the substance thereof, or increasing the price to be paid in order to carry out and complete more fully and perfectly the work herein agreed to be done and performed."

It is further stipulated that the defendant has refused to permit plaintiff to proceed with its contract in accordance with the original plan or design, and has submitted to plaintiff a proposed agreement embodying the revised plan or design, a copy of which is annexed to the stipulation of the parties, and which agreement the defendant is willing and offers to execute. It is further stated in the stipulated facts that the defendant maintains that it has the power and right to execute said agreement, and that such agreement, if executed by plaintiff and defendant, would be a valid and binding agreement upon both parties thereto. It is further stipulated as follows: " That the *plaintiff is willing to execute the proposed agreement and to abide by the terms thereof*, but maintains that the defendant has no power or right to execute the same, and that such agreement, if executed by plaintiff and defendant, would be null and void and not binding upon the parties hereto." (Italics are the writer's.) And further: " Both parties hereto agree by this stipulation that if the Court holds that the defendant has the power and right to execute said proposed agreement and that if this Court holds that the execution thereof by plaintiff and defendant would constitute a valid and binding agreement upon both parties hereto, that they will, immediately upon the coming in of the decision, execute the

said proposed agreement, and the same shall become a valid and binding agreement upon the parties hereto."

The plaintiff asks judgment that the court hold that the defendant is without power to execute the proposed agreement, even if consented to by plaintiff, and that such proposed agreement, if executed, would be null and void, and that the court hold that the refusal of the defendant to permit the plaintiff to proceed with the performance of the work in accordance with the original contract constitutes a breach of the contract by the defendant, and that the plaintiff is entitled to recover all damages, including the prospective profits, and that the same be promptly assessed by a jury before the Supreme Court.

The defendant asks judgment that the court hold that the defendant has the power to execute the proposed agreement, and that if the same is executed by the plaintiff and defendant, said proposed agreement will be valid, binding and enforcible upon both parties; and the parties having stipulated hereto to execute the same, they shall promptly execute the said proposed agreement in accordance with the stipulation, and the same shall thereupon become valid, binding and enforcible upon both parties, and that if the plaintiff refuses to do so it shall be deemed in default of its contract, with authority in the defendant to relet the work to others without being liable to plaintiff for damages.

Upon the argument, members of this court intimated that there could be no questions as to the authority of the parties to agree upon a modification of the original contract in the manner suggested. Counsel for the plaintiff then stated in open court that the original plans might be modified in accordance with the plan proposed, and that, if the court should so hold, the plaintiff was willing to proceed with the work in accordance with the modified plans, waiving any damages which the plaintiff may have sustained by reason of the modification of the original plans.

It, therefore, clearly appears that the parties are *both* willing and desirous of prosecuting the work under the revised plans. There is, therefore, no real controversy between the parties to this proceeding, and that all the parties desire is to have this court signify that in its opinion the proposed modification is entirely lawful and that the parties may legally agree to the proposed contract of modification. In short, the parties are seeking the counsel and advice of this court as to their right to enter into the modified contract.

The stipulated facts do not disclose that there is any real controversy between the parties. All that the parties desire is that this court advise as to the legality of the proposed modification of the plans for the erection of the Triborough bridge, and whether

the parties may legally execute the proposed contract for the modification of the original contract adopted between the plaintiff and the defendant. This we do not think is the province of this court, which is only to determine the law upon stipulated facts between parties to a controversy. The furnishing of advice as to the course to be pursued by those representing the city of New York is peculiarly the function of the corporation counsel, and not of this court. This court is for the purpose of deciding real controversies arising between parties, and is not called upon to furnish advice as to the legality of a desired course of action, or to decide moot questions of law.

The legal questions presented on the stipulated facts, under the plain provisions of the original contract entered into between the parties on November 29, 1933, do not present so intricate a question of law as to make it difficult for the corporation counsel to correctly advise the parties. This proceeding should, therefore, be dismissed.

MARTIN, J. (dissenting). There is no real controversy between the parties to this proceeding. The corporation counsel contends, and has so advised the Triborough Bridge Authority and the city authorities, that they have a right to change or amend the contract in question. That right and the extent thereof depends upon the facts in each case. (*National Contracting Co.* v. *Hudson River Water Power Co.*, 192 N. Y. 209.) Both parties agree that the contract should be amended and are willing to consent to same.

This is the usual case where the corporation counsel, on the facts submitted to him, must advise the authorities with reference to the power granted by the statute or the charter of the city of New York to alter, amend or change a contract, and the extent to which such change may be made. It is the familiar question which frequently comes before the corporation counsel for his advice, and has been passed upon by that office on numerous occasions.

The corporation counsel, with the facts in his possession, having advised the Triborough Bridge Authority that it may under the circumstances amend the contract and the contractor being willing to accept the amendment, there is no real question before this court. The contractor has the choice of either consenting to the amendment or suing for damages for breach of contract.

The submission of controversy should, therefore, be dismissed.

Judgment directed for the defendant in accordance with the submission.