Norman M. LOWES, Elizabeth Lowes, and the Gibson Art Company

v.

PENNSYLVANIA TURNPIKE COMMISSION.

Civ. A. No. 4890.

United States District Court
M. D. Pennsylvania.
Nov. 12, 1954.

682

Hull, Leiby & Metzger, Harrisburg, Pa., for plaintiffs.

Metzger & Wickersham, Harrisburg, Pa., for defendant.

FOLLMER, District Judge.

Plaintiffs having filed their complaint against the Pennsylvania Turnpike Commission, it moved to dismiss as follows:

"1. To dismiss the action on the ground that the Court is without jurisdiction to entertain this action because it is, in substance and effect, against the Commonwealth of Pennsylvania which has not consented to be sued or waived its immunity from suit.

"2. To dismiss the action because of improper venue in that any and all actions at law against the Pennsylvania Turnpike Commission shall be brought only in the proper Courts at the County of Dauphin, Pennsylvania."

The Act of May 21, 1937, P.L. 774, No. 211, 36 P.S.Pa. § 652a et seq. which created the Pennsylvania Turnpike Commission provided for a turnpike "from a point at or near Middlesex in Cumberland County to a point at or near Irwin in Westmoreland County". The area involved in the present action lies therein.[1]

1. A later Act of May 16, 1940, Extra Sess., P.L. (1941) 949, 36 P.S. § 653 et seq., known as the "Pennsylvania Turnpike Philadelphia Extension" providing for an extension from a point at or near Middlesex in Cumberland County to a point at the City of Philadelphia will be mentioned later.

The Act of 1937 provides: 36 P.S. § 652d.

"That there is hereby created a commission to be known as the 'Pennsylvania Turnpike Commission' and by that name the commission may sue and be sued, plead and be impleaded, contract and be contracted with, and have an official seal. * * *"

The Act of 1937 was before this Court in Hunkin-Conkey Const. Co. v. Pennsylvania Turnpike Commission, D. C., 34 F.Supp. 26, 27, and on the question of waiver Judge Watson therein said:

"The Eleventh Amendment provides that 'the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' This amendment has frequently been before the courts and it is well settled that the immunity therein granted may be waived by the State. In this case, the Commission is authorized to sue and be sued. This general provision constitutes a waiver by the State, if the State is the real party in interest, of its immunity from suit. Utah Construction Co. v. State Highway Commission, D.C., 16 F.2d 322; Interstate Construction Co. v. Regents of the University of Idaho, D.C., 199 F. 509; Hertz v. Knudson, 8 Cir., 6 F.2d 812. * * *"

With this statement I am in full accord.[2]

There is, however, as pointed out in Hunkin-Conkey Const. Co. v. Pennsylvania Turnpike Commission, supra, a further basis of jurisdiction in that the State is not the real party in interest. The defendant stresses the provision in the statute, Section 4 of the Act of 1937, 36 P.S. § 652d, that "The commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth", and the fact that the Supreme Court of Pennsylvania has so referred to the Commission. As was pointed out by this Court in American Hospital Supply Corp. v. York County Institution District, supra, such statements in the statutes and opinions of the State courts[3] are not decisive of the question and not the equivalent of saying that it is entitled to the immunity of the Eleventh Amendment. A political subdivision or a corporation may be created by and with such powers as are given to it by the State and there may be included therein service of a governmental character, delegated to it to be performed on behalf of the sovereign state without entitling it to such immunity. This was clearly indicated in Hopkins v. Clemson Agricultural College of South Carolina, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890.

The Turnpike Commission relies exclusively upon the proceeds of bonds issued by it and tolls collected by it and such bonds are not to be deemed to be a debt of the Commonwealth or a pledge of the faith and credit of the Commonwealth.[4]

In passing upon a similar turnpike commission statute of West Virginia, the court in Guaranty Trust Co. of New

---

2. American Hospital Supply Corp. v. York County Institution District, D.C.M.D.Pa., 123 F.Supp. 187.

3. See e. g. Pennsylvania Turnpike Commission v. Smith, 350 Pa. 355, 39 A.2d 139.

4. Section 2 of the Act of 1937, 36 P.S. § 652b provides:

"That turnpike revenue bonds issued under the provisions of this act shall not be deemed to be a debt of the Commonwealth or a pledge of the faith and credit of the Commonwealth, but such bonds shall be payable exclusively from the fund herein provided therefor from tolls. All such bonds shall contain a statement on their face that the Commonwealth is not obligated to pay the same

York v. West Virginia Turnpike Commission, D.C.S.D.W.Va., 109 F.Supp. 286, 292, said:

"It is true that the act creating the Turnpike Commission contains the statement that it is constituted an agency of the State, and that the exercise of its powers shall be deemed and held to be an essential governmental function of the State. But the same was true of the Pennsylvania Turnpike Commission; yet it was held in the case of Hunkin-Conkey Construction Co. v. Pennsylvania Turnpike Commission, D.C.Pa., 34 F.Supp. 26, that such a statement by the Legislature is not conclusive upon a federal court, but that the nature and attributes of the Commission should be examined and appraised in order to determine its true character. This principle was followed and approved in the case of Darby v. L. G. De Felice & Son, D.C.Pa., 94 F.Supp. 535. I agree with the reasoning of these two cases. See also Louisiana Highway Commission v. Farnsworth, 5 Cir., 74 F.2d 910; Board of Levee Commissioners [of Orleans Levee Dist.] v. Hulse, D.C.La., 17 F.2d 785. The West Virginia Turnpike Commission was given no power to incur any liability on behalf of the State. No funds of the State are used by the Commission for any purpose. The bonds are not a pledge of the faith and credit of the State, but are payable exclusively from revenue produced from the operation of the turnpike. The Commission makes its own contracts and employs and fixes the compensation of its own personnel. The only noticeable differences between the West Virginia Act and that of Pennsylvania, 36 P.S. § 652a et seq., creating the respective turnpike commissions are, that in the West Virginia act the Commission is termed an 'agency' of the state and in Pennsylvania it is named as an 'instrumentality of the Commonwealth;' the West Virginia act requires the Commission to take title to lands in the name of the state, whereas, the Pennsylvania act permits the Commission to take title in its own name; and in the West Virginia act the Commission was created for the purpose of constructing turnpikes generally, and therefore is not to go out of existence when the bonds issued for the present projects have been paid; whereas, the Pennsylvania act provided for the dissolution of the Commission on retirement of the turnpike revenue bonds. In Pennsylvania the members of the Commission are paid salaries out of revenues derived from tolls; in West Virginia they serve without compensation. These differences are, in my opinion, unsubstantial and have no bearing on the question presented. By the West Virginia act, as by the Pennsylvania act, the Legislature clearly intended to divorce the Turnpike Commission as fully as possible from any identity with the State, while giving it all the functions which are necessary and essential to the accomplishment of its purposes. * * *"

An excellent and concise statement of the status of the Turnpike Commission appears in Brenner v. Pennsylvania Turnpike Commission, 45 Pa.Dist. & Co. R. 124, 126, where the court said:

"The Act of May 21, 1937, P.L. 774, by which the Turnpike Commission was created, provides, inter

or the interest thereon except from tolls and that the faith and credit of the Commonwealth is not pledged to the payment of the principal or interest of such bonds. The issuance of turnpike revenue bonds under the provisions of this act shall not, directly or indirectly or contingently, obligate the Commonwealth to levy or to pledge any form of taxation whatever therefor, or to make any appropriation for their payment."

alia, in section 4, that 'The Commission is hereby constituted an instrumentality of the Commonwealth * * *.' In spite of this provision, we do not feel that the Turnpike Commission is the Commonwealth, nor an integral part of it. The Act of 1937, supra, provides that the credit of the Commonwealth is not extended to the commission and that no action on the part of the commission shall impose any liability upon the Commonwealth; no funds of the Commonwealth are to be used for turnpike purposes, except such as were loaned by the Department of Highways for preliminary surveys, which loans were to be repaid to that department. The salaries of the commissioners must be paid from proceeds of the turnpike revenue bonds or from the tolls collected in the operation of the turnpike. None of the receipts of the commission go to the Commonwealth at any time, and, on the other hand, all receipts from tolls or other sources must be used to pay the costs of operation and the revenue bonds issued; and when the latter are fully paid the turnpike becomes a free road, to be maintained at the expense of the Commonwealth. It is apparent, therefore, that the legislature created a corporation or entity which is entirely separate and apart from the Commonwealth and not an integral part of it. * * *"

In House v. Pennsylvania Turnpike Commission, 45 Pa.Dist. & Co.R. 677 (cited by the defendant), the court although holding the Commission to be an agency of the State and pointing out that "The right of the Commonwealth to have constructed the turnpike itself is undoubted," and referring to Section 4 of the Act, 36 P.S. § 652d, which provides:

" 'The commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth.' "

nevertheless made a most pertinent observation in relation to the problem now before us when it said "The effect of the act, therefore, is that the Commonwealth, through the medium of the Turnpike Commission, will acquire the turnpike without binding itself for the cost thereof or assuming any responsibility in connection therewith."

Defendant refers to the provision of the Act of 1940 to the effect that suits shall be brought only in the Dauphin County courts. This provision does not appear in the Act of 1937 and is not applicable here. But in any event it has relation only to the question of waiver of immunity and not to the basic question of jurisdiction involving immunity aside from any waiver.[5]

There is nothing in the relationship of the Pennsylvania Turnpike Commission to the State to remove it from that group of public corporations and political subdivisions which are not clothed with the immunity from suit which belongs to the State alone.

Defendant's motion to dismiss the complaint will be denied.

5.  Darby v. L. G. De Felice & Son, Inc., D.C.E.D.Pa., 94 F.Supp. 535; American Hospital Supply Corp. v. York County Institution District, supra.