In the Matter of NEW YORK POST CORPORATION, Appellant, *v.* ROBERT MOSES et al., Constituting the Triborough Bridge and Tunnel Authority, Respondents.

First Department, January 31, 1961.

244

M. *Marvin Berger* of counsel (*Burton M. Marks* with him on the brief), for appellant.

*Samuel I. Rosenman* of counsel (*Andrew J. Schoen* and *Donald I. Laventhall* with him on the brief; *Rosenman Goldmark Colin & Kaye,* attorneys), for respondents.

STEVENS, J. This is an appeal from an order entered June 29, 1960 which dismissed an article 78 proceeding in which petitioner sought to inspect certain files, records and minutes of respondents (hereinafter called " Authority ") for 10 years past.

The court in dismissing the petition concluded that section 66 of the Public Officers Law and section 51 of the General Municipal Law do not apply, and held that the petitioner had not shown itself to have any special interest or such clear legal right as would entitle it to the relief sought. The court said also that by virtue of the nature of the Authority, absent any language in the statute under which it was created, giving to the public a right of inspection, petitioner's claim could not be sustained under any other statute.

On appeal, petitioner (herein called " Post ") urges that:

(1) Section 66 of the Public Officers Law expresses a strong legislative policy and gives it a clear statutory right to inspect the records sought unless the statute which created the Authority or some other statute specifically forbids such an inspection.

(2) Authority is a board acting for or on behalf of a municipal corporation and its books and records are public records open to the inspection of any taxpayer, pursuant to the provisions of section 51 of the General Municipal Law.

(3) At common law the right of inspection was given to every citizen and taxpayer and it may be abridged only by an explicit statutory enactment.

(4) Post's constitutional rights are violated by Authority's refusal to permit access to its records.

Authority asserts that:

(1) It was not the intention of the Legislature in creating Authority to grant a right of inspection of its files to the public.

(2) The files, books and records sought are not public records or kept in a public office within the meaning of section 66 of the

Public Officers Law. At most, such records should be available only to those who can show a specific interest therein, and Post cannot demonstrate such interest.

(3) Assuming *arguendo* such records are subject to section 66 of the Public Officers Law, that section does not authorize a general inspection of books and records.

(4) Authority is not subject to the provisions of section 51 of the General Municipal Law.

(5) The records of Authority are not subject to inspection under the common law.

(6) No constitutional question is presented and this court, in the exercise of its discretion, should affirm the order below.

Section 66 of the Public Officers Law, states: "A person, having the custody of the records or other papers in a public office, within the state, must, upon request, and upon payment of, or offer to pay, the fees allowed by law  *  *  *  diligently search the files, papers, records, and dockets in his office; and either make one or more transcripts therefrom, and certify to the correctness thereof, and to the search, or certify that a document or paper, of which the custody legally belongs to him, can not be found."

In *Matter of Jordan* v. *Loos* (204 Misc. 814, affd. 283 App. Div. 983) petitioner, a person not aggrieved nor with any personal interest in the outcome, instituted an article 78 proceeding for an order in the nature of mandamus to compel the New York State Board of Parole to make available to her for inspection certain parole records of a prisoner. The court considered section 66 of the Public Officers Law, but pointed out " the courts of this State have not held that all records kept by public officers are ' public records ' as regards right of inspection " (pp. 816–817). It noted " [s]ection 51 of the General Municipal Law contains a provision with reference to the right to inspect public records, which is quite analogous to the provisions of section 66 of the Public Officers Law " (p. 817). The court indicated that inspection will be denied where it is so provided by statute or rules made pursuant to a power conferred by statute, or where inspection appears clearly contrary to the legislative intent, or where in the discretion of the court inspection would be contrary to public policy. The court quoted with approval the language of *Matter of Stenstrom* v. *Hartnett* (131 Misc. 75, 77, affd. *sub nom. People ex rel. Stenstrom* v. *Hartnett,* 224 App. Div. 127, affd. 249 N. Y. 606). " In the absence of statute the nature and purpose of the record, and, possibly, custom and usage, must be the guides in determining the class to which it

belongs." The court concluded (p. 821) that both public policy "and legislative intent as expressed in statute" required a denial of the right of inspection and that, insofar as it had discretion, such inspection should be denied.

In *Matter of Walker* v. *Watson* (201 Misc. 556, 557) petitioner, a taxpayer, sought an order requiring the Municipal Civil Service Commission to permit him to inspect "all books, accounts and papers in its office which set forth the names, positions and qualifications of occupants of exempt positions in the city government", etc. Respondent contended that it was not a "city department" within the meaning of section 894 of the New York City Charter, and that the papers sought were not "public records" within the meaning of section 66 of the Public Officers Law. Petitioner contended that he had an absolute statutory right to the relief sought.

The court (Mr. Justice WALTER) addressed itself "to those broader aspects of the matter, rather than to the somewhat technical questions whether respondent is or is not a 'city department', within the meaning of section 894 of the City Charter, and whether the papers sought are 'public records' in a strictly legal sense" (p. 557). Mr. Justice WALTER noted that the papers before him were "disappointingly lacking in precise information as to how statements of the qualifications of persons appointed to exempt positions came into being" (p. 557). The court concluded that no matter how such papers came into existence, and though it was a little difficult to see how the declared aim of the petitioner would be helped, that inspection should be granted. The Appellate Division, First Department, modified on other grounds by "granting the application only to the extent of directing the municipal civil service commission to permit petitioner to examine form P. 23 filed by the appointing officer of an exempt employee pursuant to rule IV of the rules of the municipal civil service commission only for specified persons, the names of such persons to be set forth in the order settled hereon on notice and, as so modified, affirmed, without costs." (280 App. Div. 760.)

And in *Matter of Blandford* v. *McClellan* (173 Misc. 15) where there was an application to require respondent to exhibit a record of a certain motor vehicle accident, the court observed "[b]oth section 66 of the Public Officers Law and section 51 of the General Municipal Law are general laws upon which respondent has no right to infringe." The court refused to base its decision upon section 51, and "held that such of respondent's records as are public records must be produced pursuant

to the command contained in section 66 of the Public Officers Law '' (p. 17). The court recognized both the right to inspect and the right to copy. (See, also, 1958 Atty. Gen. 195 *re*: right of inspection of certain papers or records filed with State Harness Racing Commission; 1955 Atty. Gen. 228.) '' Section 66 of the Public Officers Law * * * does not, except by implication, declare what records are to be open for public inspection; it does provide a procedure for inspection once a document is determined to be open to the public '' (1955 Atty. Gen. 229). '' The value of public disclosure must be weighed against the harm which would ensue to the public and to the purposes for which the information is sought. Even though the records be ' public ' in the strict sense, it does not follow that they must be disclosed for idle curiosity or other improper reason (*American District Telegraph Co.* v. *Woodbury*, 127 App. Div. 455) '' (1955 Atty. Gen. 229; 1956 Atty. Gen. 258, 260–263; 1957 Atty. Gen. 220). '' The right to inspect includes the right to copy (*Matter of Becker* v. *Lunn*, 200 App. Div. 178, 180 [which dealt with a right of inspection under section 51 General Municipal Law]) '' (1957 Atty. Gen. 221).

Section 51 of the General Municipal Law provides in part: '' All books of minutes, entry or account, and the books, bills, vouchers, checks, contracts or other papers connected with or used or filed in the office of, or with any officer, board or commission acting for or on behalf of any county, town, village or municipal corporation in this state are hereby declared to be public records, and shall be open, subject to reasonable regulations to be prescribed by the officer having the custody thereof, to the inspection of any taxpayer.''

The language of the foregoing applies to books, records, etc. of '' any officer, board or commission *acting for or on behalf of* any county, town, village or municipal corporation '', the records of which are declared to be public records (emphasis supplied).

In 1946, Triborough Bridge Authority and New York City Tunnel Authority were merged into one consolidated Authority known as Triborough Bridge and Tunnel Authority in which the powers of the original authorities were vested. (See *Triborough Bridge & Tunnel Auth.* v. *Crystal & Son*, 2 A D 2d 37, affd. 2 N Y 2d 961; L. 1946, ch. 954.)

The statutory provisions dealing with the creation, etc. of Authority are found in sections 550 to 571 of the Public Authorities Law, cited as the '' Triborough Bridge and Tunnel Authority Act.''

Under section 552, it is provided that the board of the Authority, created thereby, '' shall be a body corporate and politic constituting a public benefit corporation.'' The three members are to be appointed by the Mayor, can be removed on charges with a right to a hearing, and shall serve without compensation '' but shall be entitled to reimbursement for their actual and necessary expenses incurred in the performance of their official duties.'' The Authority is to continue for five years and thereafter until its liabilities have been met and its bonds paid in full or until such bonds and liabilities are otherwise discharged. When that occurs rights and properties of the Authority shall pass to and be vested in the city. While in existence it has power to collect tolls and revenues for the benefit of its bondholders.

Members of the Authority are subject to the same financial limitations, in terms of compensation, with respect to their official duties as are set forth in section 64 of the Public Officers Law, which provides that '' [e]very public officer who is not allowed any compensation for his services shall be paid his actual expenses necessarily incurred in the discharge of his official duties.'' Thus, it is clear that fixed compensation is not indispensable to public office, nor will its absence serve to negate the classification of public officer.

Authority has power, *inter alia*, to sue and be sued, to have a seal, to acquire in the name of the city, by purchase or condemnation, real property or rights or easements therein necessary or convenient for its corporate purposes and, with the consent of the city, to use the Corporation Counsel as its legal advisor.

Section 554 of the Public Authorities Law provides for transfer of employees from boards or city departments to the Authority without examination or loss of civil service status or pension rights.

Moneys of the Authority, from whatever source derived, are to be paid to the City Comptroller as agent of the Authority (§ 560).

The State and city are not liable on the bonds issued by the Authority (§ 564) and such bonds are tax-exempt because it is '' found, determined and declared that the creation of the authority and the carrying out of its corporate purposes is in all respects for the benefit of the people of the state of New York, for the improvement of their health, welfare and prosperity, and for the promotion of their traffic, and is a public purpose, and that the project is an essential part of the public highway system, and that the authority will be performing an essential

governmental function in the exercise of the powers conferred ''
(§ 566).

The Comptroller has the power to examine the books, etc. of
the Authority (§ 560), no personal liability attaches to any
member of the board on the execution or issuance of bonds
(§ 561), and the remedies of bondholders in case of default are
spelled out in section 567.

Jurisdiction of actions or proceedings resulting from any
default is vested in the Supreme Court.

It has been held that the Bridge Authority (forerunner of
Authority) is a subdivision of the State within the meaning of
the Revenue Act provisions excluding from gross income interest
on bonds of a State or political subdivision (*Commissioner of
Internal Revenue* v. *White's Estate*, 144 F. 2d 1019 [C. C. A. 2d,
1944], cert. denied 323 U. S. 792).

Public authorities created by New York State and authorized
to own and operate airports are agencies of the State and
eligible to receive Federal aid. (1959 Atty. Gen. 64; see U. S.
Code, tit. 49, § 1101, subd. [a].)

The language of sections 552 and 564 clearly stamps Author-
ity as a public benefit corporation within the meaning of sub-
divisions 1 and 4 of section 3 of the General Corporation Law.
(*People* v. *Malmud*, 4 A D 2d 86, 90; cf. *Union Free School Dist.
No. 3, of Town of Rye* v. *Town of Rye*, 256 App. Div. 456, 458;
cf. *Kennedy* v. *Fehlhaber Pile Co.*, 263 App. Div. 819.)

'' The American concept of a public office is that of a public
agency or trust created in the interest and for the benefit of the
people '' (42 Am. Jur., Public Officers, § 8, p. 885). It is essen-
tially an agency for public purposes (see *Nichols* v. *MacLean*,
101 N. Y. 526).

Other indicia of public office are tenure and duration, and that
the functions and duties of the office concern and affect the pub-
lic, with such duties involving some portion of the sovereign
power. All of these are met in the Authority. Absent legisla-
tive prohibition, or the existence of a rule to the contrary, the
legislative policy is to make available for inspection all records,
papers and documents kept in a public office. Indeed, unless
some overriding consideration of public policy forbids it, no
other course under our practice and traditions is likely to afford
the safeguards assured by the right of public inspection (cf.
*Matter of New York Post Corp.* v. *Leibowitz*, 2 N Y 2d 677, 686).
While we do not expressly hold that section 66 of the Public
Officers Law authorizes the examination sought, it nevertheless
'' expresses a strong legislative policy to make available to pub-
lic inspection and access all records or other papers kept ' in a

public office,' at least where secrecy is not enjoined by statute or rule. Effectuation of the policy in favor of full publicity accordingly demands the broadest possible interpretation of the scope and content of that section, so far as some overriding consideration of policy does not forbid" (*Matter of New York Post Corp.* v. *Leibowitz, supra,* p. 686).

Turning now to a discussion of section 51 of the General Municipal Law, in *Matter of Egan* (205 N. Y. 147) the court held that a writ of mandamus would lie to compel the Commissioners of Water Supply to afford a taxpayer the right to inspect engineers' reports in reference to the awarding of a contract, even though the contract was awarded under a statute which authorized the board to " select the bid or proposal, the acceptance of which will in their judgment, best secure the efficient performance of the work" (p. 150). The court traced the history and development of section 51 of the General Municipal Law (which read then as it does now), and rejected the Commissioners' contention that the right of inspection was dependent upon the right to maintain a taxpayer's suit, and that the papers sought to be inspected were private and confidential. The court, BARTLETT, J., pointed out " [t]his is not an attempted inquisition into the business affairs of a private corporation. It is an inquiry into the manner in which public business has been done" (p. 157) and used this significant language: " We can find no warrant for implying any such limitation as this into the plain language of section 51 of the General Municipal Law. All books of minutes and other public records therein mentioned are to be open to the inspection of *any* taxpayer — not merely such a taxpayer as may contemplate bringing a taxpayer's suit. The statute in which the provision first appeared (Laws of 1881, chap. 531) was entitled an act for the protection of taxpayers — which protection could well be afforded to a great extent by the requirement of publicity in official transactions as well as by enabling taxpayers to sue in the public interest. We think that the right intended to be conferred is as broad as the language used to bestow it and that there is no limitation thereof save that found in the provision itself — making the examination subject to reasonable regulations — or in special statutes relative to public documents in particular departments, such as the board of health in the city of New York. (Greater New York Charter, § 1175) " (p. 156).

Of course it has been held that " discovery of documents which are privileged from disclosure upon the ground of public policy may not be had in a civil suit. The rule applies as well to public officers as to confidential communications." (*Schuster* v.

*City of New York,* 20 Misc 2d 516, 518.) No examination before trial was permitted which would disclose confidential information, though it was granted as to other items. Neither logic, public policy, nor public welfare would seem to warrant stamping the documents sought in this proceeding as privileged from disclosure.

The provision in the law for ultimate vesting in the city to all rights and properties of the Authority would seem to indicate a present interest in the city, with a deferred right to possession, which becomes absolute upon the happening of the events provided for in the statute. Jurisdiction and control over the projects is presently vested in the Authority. The further provision requiring that contracts be let " so far as practicable " (cf. *Taylor-Fichter Steel Constr. Co.* v. *Triborough Bridge Auth.,* 241 App. Div. 75) as provided in the City Charter (Public Authorities Law, § 559), and that for purposes of continuity of jurisdiction, the Authority is " deemed and held to constitute a continuation, as to matters within its jurisdiction, of the department of plant and structures of the city for the purpose of succession to all such of the rights, powers, duties and obligations of the city and of the department of plant and structures of the city as relate to the designing and construction of the project " (§ 568) indicates that the Authority, though an agent of the State, is in one respect essentially an arm of the city, holding present title to the projects for the benefit of the city and its people.

Section 144 of the Education Law defines a public record as " any written or printed book or paper, or map, which is the property of the state, or of any county, city, town or village or part thereof, and in or on which any entry has been made or is required to be made by law, or which any officer or employee of the state or of a county, city, town or village has received or is required to receive for filing." " Section 144 of the Education Law defines ' public records ' in a manner broad enough to include any and all papers filed in a public office. However, that provision refers to ' public ' in the sense of being official and does not mean that they are necessarily open to public inspection (1946 Atty. Gen. 263) ". (1958 Atty. Gen. 195.) It is recognized that the Authority though exercising a governmental function enjoys a separate existence as a distinct corporate entity (cf. *Bird* v. *New York State Thruway Auth.* [8 A D 2d 495] — a case which involved " the question of the lent-employee doctrine as applied to workmen's compensation " [p. 496] and the right to maintain an action for damages for personal injuries). But there can be no question in theory of law of the ultimate ownership of the books and records, etc. within the section.

Since what is a public record is à question of law, " [i]n the absence of [express] statute the nature and purpose of the record, and, possibly, custom and usage must be the guides in determining the class to which it belongs. (*Evanston* v. *Gunn*, 99 U. S. 660.) " (*Matter of Stenstrom* v. *Hartnett*, 131 Misc. 75, 77, affd. 224 App. Div. 127, affd. 249 N. Y. 606, *supra.*)

Opinion 59–682 of the Opinions of the State Comptroller (15 Op. St. Comp., 1959, pp. 377–378) refers to three categories of records:

" *First*, there is the document or paper which is unquestionably a public record, either because the statute says it is or because the court thinks it is. As to such, there is a right to inspect, limited only by reasonable rules and regulations set up by the custodian as to the manner in which inspection may be had. [Cases cited.]

" *Second*, there is the record which the court concedes is of a public nature but which it is unwilling to open to unlimited inspection by calling it a public record. As to these records, the courts say the right of inspection exists only if the person can show a private interest. [Cases cited.] Examples of records in this category are motor vehicle accident reports, reports to the State Tax Commission, certain health records, vital statistics and court and trust fund records.

" *Third*, there is the paper or document which the court says is not a public record and as to which there is no right of inspection at all. [Cases cited.] Examples would include police reports, confidential communications and evidence, parole boards records, and certain lists and records not required to be kept but which are kept to facilitate administrative procedures."

The right of inspection under section 51 may be also curtailed or superseded by specific law or charter provision, or may be limited as it affects papers or records by judicial construction where the court feels such construction will " fulfill policies which the Legislature evidently had in mind." (Cf. *Matter of Cherkis* v. *Impellitteri*, 307 N. Y. 132, 148.)

Obviously the records sought do not fall within the second or third categories. Most of the cases cited by Authority fall within the second category and are readily distinguishable from the problem at hand, or the records were made by a private person and merely filed in a public office. For example, *Matter of Natelson* v. *Portfolio* (291 N. Y. 290) where the court held certain regulations of the City Treasurer reasonable as a prerequisite to issuance of a certificate of deposit of certain moneys held by the Treasurer. The court said " No one has any fair reason for seeking such a certificate except the owner of the

money, or his representative, or a public official '' (p. 295). But it should be noted that this particular fund for which a certificate was sought was created by the act of a private citizen in depositing '' in obedience to an order of the Supreme Court, and to the credit of petitioner, then an infant, a sum of money representing the proceeds of the settlement of a lawsuit '' (p. 293). And, *People ex rel. Stenstrom* v. *Hartnett* (249 N. Y. 606, *supra*) involved the disclosure of an accident report to one involved and properly entitled thereto. While in *Matter of Erenberg* v. *Brill* (10 A D 2d 769) an article 78 proceeding, the petitioner who had been involved in an accident and had previously instituted suit against the driver of the automobile, sought to compel the defendant, Chairman of the Thruway Authority, to release to her a report of an investigation of the accident made by one of its employees. This report was not made pursuant to any requirement of law, but would be used by the Authority in defense of claims (the Authority was not a party to the suit) and was helpful in bringing about engineering, administrative and enforcement changes. The petitioner had received already the State Police report, but contended that the report sought, though admittedly not made by a peace officer within the meaning of section 361 of the Public Authorities Law was, in fact, a police report. This contention was rejected, as was respondent's contention that such report was privileged. The court pointed out that the information sought could be obtained by a subpœna of the record or of the person, but refused to direct the furnishing of a copy of the investigation report.

Contracts, bids, employment records, etc., are not such documents or records, the exposure of which would be dangerous to the public interest or detrimental to its welfare. The records sought relate to the discharge by public officers of certain duties imposed by law, or with which they were entrusted in the conduct of a public business. No personal or private interests are necessarily involved. No good reason exists why absolute secrecy should be imposed, for this is, as pointed out, a matter dealing with public business. Because of the provision for reversion the Authority is really a trustee for the people, subject to being divested of its interest upon the happening of a condition subsequent. Conceivably such occurrence could be accelerated by the city if it wished to make payment of the outstanding obligations (Public Authorities Law, § 552). Moreover, practically all of the projects handled by the Authority involve real property, and '' records of documents affecting the title to real property are generally considered to be public records.'' (45 Am. Jur., Records and Recording Laws, § 4.)

The English common-law doctrine was that " [e]very person is entitled to the inspection, either personally or by his agent, of public records, including legislative, executive, and judicial records, provided he has an interest therein which is such as would enable him to maintain or defend an action for which the document or record sought can furnish evidence or necessary information." (45 Am. Jur., Records and Recording Laws, § 17.) It was pointed out that this doctrine evolved because English courts were seldom called upon to enforce the right of private individual inspection " except where the inspection was desired to secure evidence in a pending or prospective suit." The right of inspection was recognized at common law, but before it could be enforced by legal action (mandamus), it was essential that the applicant show a legal interest to be served by the inspection. (See, generally, Ann. 60 A. L. R. 1356 *et seq.*, Inspection of Public Records — Mandamus.) The common-law rule has not been followed in this State in its limitations. (See *Matter of Egan, supra.*) As was pointed out by BARTLETT, J. (*Matter of Egan*, 205 N. Y. 147, 155), " [t]he prior legislation on the subject [right of examination] was replaced by chapter 531 of the Laws of 1881, entitled ' An Act for the protection of taxpayers.' This statute not only continued the right bestowed upon taxpayers by the earlier acts of the legislature but for the first time conferred upon them in express terms the right to inspect public documents — and in the very words now found in section 51 of General Municipal Law ".

We adverted to the common law and early statutes because " [t]he history of what the law has been is necessary to the knowledge of what the law is." (Holmes, The Common Law, p. 37.)

The Report of the Temporary State Commission on Coordination of State Activities, which consisted largely, though not entirely, of members of the Legislature, who were also members in 1946 (the year in which the Authority was created by a merger), and of which William J. Ronan was Director of Studies, uses striking language on public authorities and the need for permitted inspection:

" Public authorities are agencies of the State, and their operations should be an open book. Autonomy does not mean secrecy. On the contrary autonomy would appear to require, if anything, more of an open book operation than would regular State departments whose work is closely reviewed annually in the budget process and continuously in personnel hiring through civil service procedures.

'' As authorities increase in number, the amount of attention centered upon any one of them may diminish. Being in the public eye is itself an inducement to prudence   *   *   *   The ready access of the public to information provides a safeguard without disturbing public authority.'' (N. Y. Legis. Doc., 1956, No. 46, pp. 205–206.)

Certainly, while the statute at the time of the creation of the Authority is silent as to legislative intent respecting examination, there clearly existed a respectable body of legislative opinion in 1956, as evidenced by the Ronan Report, that such examination or inspection serves a salutary purpose.

Under the law the Authority is given the power of condemnation. Such a power exists only when the realty is taken for a public use. Additionally, the city may acquire land by condemnation or purchase and transfer the same to the Authority, in some instances without full consideration. The Public Authorities Law even provided for assignment by the city to the Authority, by resolution of the Commissioners of the Sinking Fund, of lands owned by the city, without consideration.

This attribute of sovereignty (condemnation) in the Authority stamps its activities as a public business which exists for public service, and one with which the public is rightfully concerned. The fact that the ultimate cost of construction, though not perpetual maintenance, may be met by the floating of bonds or collection of tolls does not change the essential character of the operation. A citizen and a taxpayer by virtue of that status has a right of inspection, both at common law and by statute, to the records of a public business. A newspaper has a right to publish matters of public interest for the citizens are interested in knowing how and whether public businesses are properly managed. (Cf. *Nowack* v. *Auditor Gen.*, 243 Mich. 200 [1928].) Mere inconvenience resulting from inspection cannot be equated with public detriment, nor be construed as inimical to the public welfare, or against public policy.

We conclude that the Authority is a public business which maintains a public office as the term is defined. A citizen and a taxpayer by virtue of such status has a right of inspection, though the courts will apply a rule of reason in determining whether and to what extent the judicial machinery may be utilized to compel enforcement of that right (cf. *Shelley* v. *Kraemer*, 334 U. S. 1, where, although the court did not dispute the right of parties to enter into contracts containing restrictive covenants, it denied enforcement by use of judicial machinery to those contracts). The courts will balance the equities, consider the objective sought to be accomplished and such other factors

as it deems pertinent. The status of citizen and taxpayer is sufficient to establish special interest if such were needed, though we hold it unnecessary. No contrary legislative intent [to inspection] appears from the language of the statute creating the Authority, nor from such language does anything appear which would warrant judicial exclusion from the right of examination, or exception to the application of the provisions of section 51 of the General Municipal Law.

The period of time embraced within the application is, in our view, too extensive. Accordingly, the petition is allowed and a right of inspection will be granted for a period limited to four years prior to the date of the entry of the order herein and to the extent and in the particulars as follows:

(A) The contract files of the Authority, including contracts covering maintenance, new construction, the retainer of engineering and consulting services, whether or not let by competitive bidding, contracts dealing with the sale or acquisition of property, and contracts dealing with the underwriting and flotation of the Authority's bond issues, provided that such parcels be specifically identified with particularity in the order to be settled on notice.

(B) The records of the Authority dealing with leaves of absences granted to executive employees and outside employment of such employees, provided that the names of such persons be set forth in the order to be settled on notice.

(C) The minutes of the meetings of the Authority dealing with the subject matter embraced within Items (A) and (B) above.

The granting of the petition is subject, of course, to such reasonable regulations as the Authority may provide. These regulations may require that inspection of documents shall be during regular business hours, that no documents shall be removed from the custody of the Authority, that the examination of documents shall proceed in orderly and chronological fashion, that the documents sought to be examined shall be specified with such degree of clarity that they may be identified readily, that copies may be made at the expense of petitioner, and the general business of the Authority shall not be unduly interfered with. The enumeration of certain regulations is not to be construed as excluding others which are or may be reasonable in content. In other words, as indicated, there is no unrestricted right of examination.

The determination made herein is without prejudice to a further application upon a sufficient showing of the needs therefor.

The order appealed from should be reversed on the law and on the facts, with costs. Settle order on notice.

BOTEIN, P. J., RABIN, McNALLY and NOONAN, JJ., concur.

Order, entered on June 29, 1960, which dismissed the petition for an order under article 78 of the Civil Practice Act for an inspection of the files and records of the respondents, unanimously reversed, on the law and on the facts, with $20 costs and disbursements to the appellant, and the application granted to the extent and in the particulars as specified in the opinion of STEVENS, J., filed herein. Settle order on notice.