**RAYMOND INTERNATIONAL INC.,**
Plaintiff,

v.

**The M/T DALZELLEAGLE, her engines, boilers, etc., and McAllister Brothers Inc., Defendant and Third-Party Plaintiff,**

v.

**TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, Third-Party Defendant.**

No. 70 Civ. 2421.

United States District Court,
S. D. New York.

Nov. 4, 1971.

Symmers, Fish & Warner, New York City, for plaintiff; Frederick Fish, William Warner, New York City, of counsel.

McHugh, Heckman, Smith & Leonard, New York City, for defendant and third-party plaintiff; Stephen J. Buckley, Robert Roventini, New York City, of counsel.

Donovan, Donovan, Maloof & Walsh, New York City, for third-party defendant; David L. Maloof, Joseph M. Mangino, Dennis P. Costigan, New York City, of counsel.

LASKER, District Judge.

On April 10, 1970, plaintiff's derrick barge CENTURY in tow of defendant-third party plaintiff McAllister Brothers Inc.'s ("McAllister") tug, DALZEL-LEAGLE, collided with the Marine Parkway Bridge, owned and operated by third-party defendant Triborough Bridge and Tunnel Authority ("Triborough"). Basing its claim upon our admiralty jurisdiction (Rule 9(h), F.R. Civ.P.), plaintiff sued McAllister for having caused the collision. On August 7, 1970, 119 days after the collision, McAllister impleaded Triborough. Triborough now moves to dismiss the third-party complaint under Rule 12(b) (6), F.R.Civ.P., on the ground that it fails to state a claim under which relief can be granted, and under Rule 56(b), F.R.Civ.P., for summary judgment.

Triborough contends that, as a state created agency and a public benefit corporation performing a state function it is not subject to suit by virtue of the provisions of the Eleventh Amendment to the United States Constitution, which reads:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

Alternatively, Triborough argues that it has conditionally waived its immunity under section 50-e of the General Municipal Law of New York, McKinney's Consol. Laws, c. 24, which provides that in any claim against Triborough notice must be given to it within 90 days after the claim arises, and that since defendant McAllister failed to notify it within 90 days of the collision, its third-party complaint must be dismissed.

Plaintiffs [1] contend that Triborough is not the "alter ego" of the State of New York but is an autonomous corporation and, accordingly, does not come within the aegis of the Eleventh Amendment. With regard to Triborough's second contention, plaintiffs do not dispute the fact that they did not file their claim within 90 days, as required by section 50-e of the General Municipal Law; but, they argue, section 50-e has no application in a maritime case. We agree with plaintiffs on both counts.

## THE IMMUNITY CLAIM

The critical determination of whether Triborough constitutes the alter ego of the state depends on Triborough's relative dependence on or independence of the state. Therefore it is necessary preliminarily to examine the pertinent sections of the Public Authorities Law of New York (McKinney's Consolidated Laws, c. 43–A, Vol. 42, Title 3) which created the Triborough and delineates its powers and duties.

1. Triborough is a consolidation of the former Triborough Bridge Authority, the New York City Parkway Authority, and New York City Tunnel Authority. Public Authorities Law, McKinney's Consolidated Laws, Vol. 42, § 552–a(1) (a).

2. Triborough is a "body corporate and politic constituting a public benefit corporation." § 552(1)

3. When all the liabilities of Triborough are met, all rights and properties vest in New York City. § 552(2)

4. Triborough itself retains full jurisdiction and control over all its projects, including tolls and revenues collection. § 552(2)

5. Triborough is liable for the debts and liabilities it incurs. § 553(1)

6. Triborough is required to acquire all real property in the name of New York City. § 553(4)

7. The New York City Comptroller may examine Triborough's records. § 560

8. All bonds are issued by Triborough. § 561

9. Either the State of New York or New York City may require Triborough to redeem as a whole any issue of bonds under specified conditions. § 562

10. The bonds of Triborough are not a debt of the state nor of the city, and neither the state nor the city is liable thereon. § 567. Bonds shall be paid only out of the moneys and revenues of Triborough. § 561(1)

11. Triborough's chairman and its members, who are also chairman and members of the Metropolitan Transportation Authority, are appointed by the Governor of New York. § 552, § 1263(1).

▮▮▮▮ Both sides agree that the standard for determining Triborough's immunity under the Eleventh Amendment is whether Triborough may be termed the "alter ego" of the state, State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929), or whether the state is the "real, substantial party in interest." Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). In making such determination, federal law is to be applied. Masse v. Pennsylvania Turnpike Commission, 163 F.Supp. 510 (E.D.Pa.1958); Zeidner v. Wulforst, 197 F.Supp. 23 (E.D.N.Y.1961); Matherson and Oak Beach Inn Corp. v. Long Island State Park Commission and Jones Beach Parkway Authority, 442 F.2d 566 (decided May 5,

1971, 2d Cir.); DeLong Corp. v. Oregon State Highway Commission, 233 F.Supp. 7 (D.Or.1964). Whether Triborough is entirely separate and distinct from the state for every purpose need not be determined. What is crucial is whether the relief sought is, in effect, relief against the state. Ford Motor Co. v. Department of Treasury of Indiana, supra, 323 U.S. at 463, 65 S.Ct. 347; Harrison Construction Co. v. Ohio Turnpike Commission, 272 F.2d 337, 340 (6th Cir. 1959). Accordingly, the court must focus on the financial independence of the Triborough and ascertain whether its obligations, fiscal or otherwise, are, indeed, those of the state. As the Supreme Court has said in Ford Motor Co. v. Department of Treasury of Indiana, supra, 323 U.S. at 464, 65 S.Ct. at 350:

"And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."

▮▮▮▮ Applying these standards to the case at bar, it is clear from an analysis of Triborough's statutory bases that it is not the alter ego of the State of New York. In §§ 552(2), 553(1), and 561(1), the legislature has intentionally insulated the treasury of the state from any liabilities that Triborough might incur. The fact that Triborough has been expressly authorized "to sue and be sued" (§ 553(1)) is a strong indication that the state did not intend to clothe Triborough with sovereign immunity. Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); Linger v. Pennsylvania Turnpike Commission, 158 F. Supp. 900 (W.D.Pa.1958). See 49 Am. Jur., States, Territories and Dependencies § 102. Moreover, the statute simply does not obligate the state to guarantee the bonds of Triborough. Even where it has been found that the state guaranteed the bonds of an authority, it has been held that the authority was not the alter ego of the state for Eleventh

Amendment purposes. See Zeidner v. Wulforst, supra.

Triborough contends that it is immune under the Eleventh Amendment because it is a state agency performing a state function. However, whether Triborough performs a state function does not resolve the question, since that fact alone does not immunize a state instrumentality under the Eleventh Amendment. Lowes v. Pennsylvania Turnpike Commission, 125 F.Supp. 681 (W.D.Pa. 1954). As Justice Frankfurter declared in Keifer & Keifer v. Reconstruction Finance Corp. (1939), 306 U.S. 381 at 388, 59 S.Ct. 516 at 517, 83 L.Ed. 784:

" . . . the [United States] government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work."

Although Triborough was created by the state, and though the Governor appoints members to Triborough's commission, Triborough is nevertheless an independent corporate entity, standing on its own feet. See New York Post Corporation v. Moses, 23 Misc.2d 826, 204 N.Y.S.2d 44, reversed 12 A.D.2d 243, 210 N.Y.S.2d 88, reversed 10 N.Y.2d 199, 219 N.Y.S.2d 7, 176 N.E.2d 709 (1960), where the New York Court of Appeals carefully analyzed Triborough's relation to the state and to New York City. As Judge Burke said for the majority:

"However close such relationship [between the State and the Authority] may be, though, it is abundantly clear that the Authority stands on its own feet, transacts its business affairs through its own personnel and on its own initiative and is not subject to the strict requirements imposed upon a board or department of the State ، . ." New York Post Corp. v. Moses, supra, 10 N.Y.2d at 203–204, 219 N.Y.S.2d at 9–10, 176 N.E.2d at 711.

By immunizing its treasury from the liabilities of Triborough the state cannot then claim it is entitled to sovereign immunity. See 74 Harv.L.Rev. 714 (1961), The Applicability of Sovereign Immunity to Independent Authorities. Furthermore, as the plaintiffs correctly point out in their briefs and as its statutory structure in the Public Authorities Law (McKinney's Consol. Laws, Vol. 42) clearly indicates, Triborough has more intimate ties with the City of New York than with the State.

Our holding today is consonant with the decisions of other federal courts which have had occasion to consider the question of the public authority's sovereign immunity under the Eleventh Amendment. In Matherson and Oak Beach Inn Corp. v. Long Island State Park Commission and Jones Beach Parkway Authority, supra, the Second Circuit held as to the Jones Beach Parkway Authority ("Jones Beach") that the doctrine of sovereign immunity was inapplicable because it was not the alter ego of the State of New York. A comparison of the statutory bases of Jones Beach and Triborough, both of which are defined in the Public Authorities Law of New York, indicates that Jones Beach has even closer ties to the State than Triborough. For example, Jones Beach has power to acquire real property in the name of the State (§ 158–b, subd. 1), while Triborough only has the power to acquire real property in the name of the city (§ 553(4)). And when Jones Beach ceases to exist, all its rights and properties pass to the State (§ 152), whereas when such termination occurs with respect to Triborough, all rights and properties are vested in New York City. (§ 552(2)). See also S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, 268 F.Supp. 568 (D.N.J.1967); Harrison Construction Co. v. Ohio Turnpike Commission, supra; Lowes v. Pennsylvania Turnpike Commission, supra, all of which held that the public authority in question was not immune under the Eleventh Amendment.

Triborough cites Huckins v. Board of Regents of University of Michigan, 263 F.Supp. 622 (E.D.Mich.1967), and Citizens Committee for Hudson Valley v. Volpe, 297 F.Supp. 809 (S.D.N.Y.1969),

for its contention that Triborough is entitled to the State's immunity. These cases are inapposite, however, because they involved suits against the Board of Regents of Michigan and the State Department of Transportation, respectively, both of which were departments of the state. Furthermore, in *Citizens Committee* (at 810–811) Judge Edelstein carefully pointed out that the suits were brought against a named defendant in his official capacity as commissioner of a state instrumentality and that, therefore, the relief sought could be granted only against the state itself.

## THE EFFECT OF SECTION 50-e OF THE GENERAL MUNICIPAL LAW

■ There remains for determination the question whether this court should apply the procedural requirements of § 50-e of the General Municipal Law of New York.[2] We hold that the existence of plaintiff's claim recognized in admiralty law precludes the application of the state statute.

Finding, as we do, that Triborough is not the alter ego of the state, we follow the holding and rationale of this court in Frame v. City of New York, 34 F. Supp. 194 (S.D.N.Y.1940). There the plaintiff sued in admiralty, but failed to comply with the notice of claim or statute of limitation provisions of New York law, the forerunner of General Municipal Law § 50-e. The defendant, the City of New York, contended that plaintiff's lack of compliance was fatal to his cause. Judge Bondy said:

"The applicability of these provisions of the New York law must be determined in the light of the established principle that while limited changes and modifications in the maritime law may be made by state legislation, [citations] such legislation may not val-

idly contravene the essential purpose expressed by an act of Congress, nor work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations. [citations].

"It is immaterial in this regard that municipal liability in tort in New York generally is a matter within the control of the state legislature, and that when it declares upon what such liability shall be predicated, the statutory provisions ordinarily are controlling. [citations]. The local rules respecting municipal liability in tort may be overridden 'by the law of the sea.'

" . . . The remaining requirement that a claim for adjustment be presented to the comptroller of the city before the commencement of any action against the city is also inconsistent with the uniform operation of the maritime law within all the states, which can not be deflected or impaired by state statutes." Frame v. City of New York, supra, at 196–197.

In Morales v. City of Galveston, 181 F.Supp. 202 (S.D.Tex.1959), the plaintiffs failed to comply with ordinances of the City of Galveston similar to the notice provisions of § 50-e. The district court rejected the contention that failure to give notice would impair the plaintiffs' claim. The ordinance, if given effect, the court stated, "would work a material prejudice to the application of the maritime law, and interfere with the uniformity thereof." (at p. 208). See also Rogers v. City of New York, 46 Misc.2d 373, 259 N.Y.S.2d 604 (Sup.Ct. N.Y.Co., 1965), where the court held that the limitation contained in General Municipal Law 50-i, subd. 1(c), which

2. Anticipating that its claim to immunity under the Eleventh Amendment might be rejected, Triborough suggests that under *state law* (§ 50-e of the General Municipal Law referred to in the text above) it is conditionally immune. We find otherwise, since federal, not state, law controls

in this maritime case. The doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), has application only in diversity suits and not in suits based on our admiralty jurisdiction.

requires that a tort action against a municipal corporation be commenced within one year and ninety days, is inapplicable in a state court where the tort action is based on federal law and which, if brought in the district court, could only have been based on admiralty jurisdiction.

For the reasons stated above Triborough's motion to dismiss the third-party complaint is denied.

It is so ordered.