**DORIS TRADING CORPORATION,**
Plaintiff,

v.

**The SS UNION ENTERPRISE, her engines, boilers, etc., et al.,**
Defendants.

**No. 75 Civ. 3952–LFM.**

United States District Court,
S. D. New York.

Jan. 23, 1976.

Bigham, Englar, Jones & Houston, New York City (James J. Burns, New York City, of counsel), for defendant South Carolina State Ports Authority.

Purrington & McConnell, New York City (John Hay McConnell, New York City, of counsel), for plaintiff.

## OPINION

MacMAHON, District Judge.

Defendant, South Carolina State Ports Authority ("Authority"), moves for an order, pursuant to Rule 12(b), Fed.R. Civ.P., dismissing the claim against it in this action on three grounds:

(1) the Authority is immune from suit in this court under the Eleventh Amendment;

(2) the court lacks subject matter jurisdiction; and

(3) service of process was defective.

Plaintiff, Doris Trading Corporation, commenced this action by filing a complaint on August 11, 1975, alleging that this is a maritime claim within the meaning of Rule 9(h), Fed.R.Civ.P.

Plaintiff claims that the shipper, Samuel & Co., Inc., on or about July 3, 1974 delivered 172 bales of cotton sheeting, in good order, to the SS Union Enterprise (which was owned by, or under the control of, defendant China Union Lines), in Keeling, Taiwan, to be transported to the port of Charleston, South Carolina. The cotton was identified by a bill of lading numbered TCT–24. The SS Union Enterprise arrived in Charleston on or about August 16, 1974. The cotton was delivered to plaintiff, allegedly in a damaged condition, on or about August 22, 1974 by defendant Authority. Plaintiff now seeks to recover $101,605.81 in damages.

1. *The Eleventh Amendment.*

The Eleventh Amendment to the Constitution provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of an-

other State, or by Citizens or Subjects of any Foreign State."

The Authority contends that it is an instrumentality of the State of South Carolina and is, therefore, immune under the Eleventh Amendment. Furthermore, the Authority asserts that it has done nothing to waive immunity. Plaintiff contends that this action is not against the State of South Carolina but against a distinct business organization which is not protected by the Eleventh Amendment, or, if it is, that Authority has waived its immunity.

Our first inquiry is addressed to whether the Authority partakes of the Eleventh Amendment immunity of the State of South Carolina. This is a question of federal law,[1] and the nature of the claim asserted has no bearing on its resolution. It is only after an affirmative answer to this question that the issue of waiver must be determined.

The test to be applied is whether the Authority is an "alter ego" of the state.[2] The answer depends upon whether the state is the "real substantial party in interest."[3] This, in turn, depends upon whether the relief sought is relief against the state,[4] and here, the crucial factor to consider is the fiscal relationship between the Authority and the state.

█ The only case we have found dealing with this problem is *South Carolina Ports Authority v. Seaboard Air Line R. R.*, 124 F.Supp. 533 (E.D.S.C. 1954), where it was held that the Authority was " 'in a real sense a part of the State, and shares in its sovereignty.' "[5] However, there the

court rested its decision upon the governmental nature of the activities performed by the Authority and did not inquire into the relationship between the Authority and the state. If the Authority is not an "alter ego" of the state, the fact that it is performing governmental functions has no bearing upon the question of whether it is cloaked by the Eleventh Amendment,[6] for "the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work."[7]

We look to state law to determine the relationship between the Authority and the state. Study of the pertinent statutes reveals the following:

The Authority was created by § 54–1 of the Laws of South Carolina, to be governed by a board of seven members appointed by the Governor.

Section 54–13 states that the "Authority is created as an instrumentality of the State," for the purpose of developing the harbors and stimulating trade through the ports of South Carolina.

The powers of the Authority are defined in § 54–14, which provides that the Authority "shall have the powers of a body corporate, including the power to sue and be sued, to make contracts and to adopt and use a common seal and alter it as may be deemed expedient." This section also gives the Authority the power to pay all necessary costs and expenses arising from its formation and operation, and the power to accept loans.

Section 54–14(9) specifically provides that "no indebtedness of any kind in-

1. *Matherson v. Long Island State Park Comm'n*, 442 F.2d 566 (2d Cir. 1971); *Bowen v. Hackett*, 387 F.Supp. 1212 (D.R.I.1975); *Raymond Int'l v. M/T Dalzelleagle*, 336 F.Supp. 679 (S.D.N.Y.1971); *Masse v. Pennsylvania Turnpike Comm'n*, 163 F.Supp. 510 (E.D.Pa.1958).

2. *State Highway Comm'n of Wyoming v. Utah Constr. Co.*, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929).

3. *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

4. *Ford Motor Co. v. Department of Treasury of Indiana, supra*, 323 U.S. at 463, 65 S.Ct. 347.

5. 124 F.Supp. at 536.

6. *Bowen v. Hackett, supra*, 387 F.Supp. at 1220; *Gordenstein v. University of Delaware*, 381 F.Supp. 718, 723 (D.Del.1974); *Raymond Int'l v. M/T Dalzelleagle*, 336 F.Supp. at 682; *Lowes v. Pennsylvania Turnpike Comm'n*, 125 F.Supp. 681 (M.D.Pa.1954).

7. *Keifer & Keifer v. Reconstruction Finance Corp.*, 306 U.S. 381, 388, 59 S.Ct. 516, 517, 83 L.Ed. 784 (1939).

curred or created by the Authority shall constitute an indebtedness of the State, or any political subdivision thereof, and no such indebtedness shall involve or be secured by the faith, credit or taxing power of the State, or any political subdivision thereof." The Authority is also empowered to acquire property through purchase or condemnation in its own name.

Financial matters of the Authority are covered by §§ 54–61 through 54–64. The Authority is empowered to raise funds by issuing bonds, payable out of revenues derived from its operations. All funds are to be deposited in bank accounts, and all earnings not necessary for operating expenses are to be held "subject to further action of the General Assembly."

▪ The relationship, as revealed by these statutes, establishes that the Authority is not an "alter ego" of the state and, therefore, cannot claim the state's Eleventh Amendment immunity. The state created the Authority with broad powers to sue and be sued, to pay all expenses arising from its activities, and to incur indebtedness in its own name. Furthermore, the state has purposefully insulated its treasury from any possible liability for any indebtedness incurred by the Authority.[8] Thus, the operation of a judgment, adverse to the Authority, will have no effect upon the treasury of South Carolina, and, therefore, the state is not a real substantial party in interest in this suit.

2. *Lack of Subject Matter Jurisdiction.*

In this case, plaintiff has taken full advantage of the very liberal pleading requirements in admiralty actions. In fact, plaintiff's counsel frankly admits that, at this time, he is ignorant of the facts underlying this action other than those stated in the complaint. He does not have any idea at what point the cotton was damaged, while aboard ship, while being unloaded, or while in the hands of the Authority.

The Authority contends that it is being charged with negligence as a warehouseman and that, therefore, there is no admiralty jurisdiction. Plaintiff responds that the Authority acted incidentally to the contract for carriage and is a necessary party.

We are of the opinion that, on the face of the meager record before us, jurisdiction must be sustained.

Plaintiff cites *Marubeni-Iida (America), Inc. v. Nippon Yusen Kaisha*, 207 F.Supp. 418 (S.D.N.Y.1962), where Judge Palmieri held that an impleader of the stevedore by the defendant shipowner in a cargo damage case was permissible. The court stated that "if the cargo is on the wharf as an incident to maritime carriage, whether before loading or after unloading, the action is within the admiralty jurisdiction."[9] The reasoning should be analogous here, where the Authority has been joined as an original party defendant, rather than as a party impleaded by China Union Lines.

▪ It is, of course, still the law that admiralty jurisdiction does not extend to actions involving damage to cargo being held for storage purposes.[10] However, admiralty jurisdiction does apply to the unloading of cargo and to the furnishing of wharf facilities.[11] Therefore, until it is possible to determine at what point, if any, the cargo was damaged, we should resolve our doubts in favor of upholding jurisdiction.

---

8. This fact has been found to be of great significance in a number of similar cases. See, e. g., *Harrison Constr. Co. v. Ohio Turnpike Comm'n*, 272 F.2d 337, 339 (6th Cir. 1959); *Bowen v. Hackett, supra*, 387 F.Supp. at 1221; *Gordenstein v. University of Delaware, supra*, 381 F.Supp. at 722; *S. J. Groves & Sons Co. v. New Jersey Turnpike Authority*, 268 F.Supp. 568, 575 (D.N.J.1967).

9. *Marubeni-Iida (America), Inc. v. Nippon Yusen Kaisha*, 207 F.Supp. 418, 419 (S.D.N.Y. 1962).

10. *Pillsbury Flour Mill Co. v. Interlake S. S. Co.*, 40 F.2d 439 (2d Cir.), *cert. denied*, 282 U.S. 845, 51 S.Ct. 24, 75 L.Ed. 750 (1930).

11. *American Stevedores, Inc. v. Porello*, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011 (1947).

### 3. *Service of Process.*

The summons and complaint in this action were served by a United States Marshal by delivering a copy of each to the New York "sales office" of defendant Authority, within the Southern District of New York. The Authority contends that such service is insufficient to obtain personal jurisdiction over it because service upon it must be made in accordance with the terms of Rule 4(d)(6), Fed.R.Civ.P., which provides for service

> "[u]pon a state or municipal corporation or other governmental organization thereof subject to suit, by delivering a copy of the summons and complaint to the chief executive officer thereof or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant."

South Carolina does not authorize service upon the state in the manner by which it was effected in this case.

Plaintiff contends that the Authority is a foreign corporation and, therefore, may be served in accordance with the terms of Rule 4(d)(3) or 4(d)(4).

■ Implicit in our holding that the Authority is not under the protection of the Eleventh Amendment is the finding that it is not a state or governmental organization. As such, it is not entitled to service under Rule 4(d)(6). Rather, for these purposes, it is considered as an ordinary foreign business corporation.[12]

■ We believe that the present case is governed by § 301 of the New York Civil Practice Law and Rules (McKinney 1972). The Authority maintains a New York "sales office" which performs, according to defendant Authority's counsel, "sales and public relations activities" on a regular basis. Plaintiff asserts, and defendant does not deny, that Authority's New York representatives "address meetings, call on shippers, distribute literature, take and relay orders, and conduct all the other usual facets of a normal business sales organization." These regular and systematic activities are sufficient to establish that the Authority is "doing business" and, therefore, present in New York.[13]

■ Service was accepted, as shown by the Marshal's return, by a Mr. Carl Staggs, who describes his own status as a manager of the office. The Authority claims that Mr. Staggs does not have the authority to bind it, but does not contradict his managerial position. Under CPLR § 311, such a person may accept service for a corporation. Therefore, it is evident that service was not defective and that this court has personal jurisdiction over the Authority.

Accordingly, defendant South Carolina State Ports Authority's motion to dismiss the complaint against it is denied in all respects.

So ordered.

---

12. See *S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, supra,* 268 F.Supp. 568.

13. See *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 115 N.E. 915 (1917). See generally *Frummer v. Hilton Hotels Int'l,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Bryant v. Finnish Airline,* 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965).